72 N.Y.2d 662 (1988)
In the Matter of Alonzo M., Respondent,
v.
New York City Department of Probation et al., Appellants.
Court of Appeals of the State of New York.
Argued October 14, 1988.
Decided December 15, 1988.
Peter L. Zimroth, Corporation Counsel (Trudi Mara Schleifer and Francis F. Caputo of counsel), for appellants.
Henry S. Weintraub and Lenore Gittis for respondent.
Judges KAYE, ALEXANDER and TITONE concur with Judge BELLACOSA; Chief Judge WACHTLER dissents and votes to reverse in a separate opinion in which Judges SIMONS and HANCOCK, JR., concur.
*663 BELLACOSA, J.
The New York City Department of Probation (Probation) reviewed sealed information of favorably terminated matters concerning petitioner  a juvenile  and supplied protected data from its own separately maintained records to the Family Court in connection with the disposition of the youth's latest brush with the law. The core issue is whether Probation violated the sealing protections of Family Court Act § 375.1 and the implementing judicial sealing orders. We agree with the lower courts that Family Court Act § 375.1 governs, that it *664 is clear on its face and in its purpose, and that it has been violated. We thus affirm the order of the Appellate Division.
Petitioner, Alonzo M., had been placed on probation after a Family Court finding that he had engaged in acts constituting for an adult the crime of robbery in the third degree. Ten months later, it was alleged that the juvenile violated probation in respect to reporting and school attendance conditions. He conceded the violation, the matter was adjourned, and the court ordered Probation to provide an updated Investigation and Report (I & R) for the dispositional hearing (see, Family Ct Act § 351.1; 9 NYCRR part 350).
An I & R is a document prepared to assist a Family Court Judge in determining the appropriate disposition after adjudication of juvenile delinquency charges. The updated I & R in this case listed four arrests under "previous legal history". The first two were accompanied by a reference that they were sealed, and the remaining two were followed by the notations "dismissed" and "petition withdraw[n]". The report added that "[d]uring the period of Probation Supervision, Respondent was rear[r]ested on 2 different occasions on Robbery related charges". The charges arising from each of these incidents were also terminated in the juvenile's favor and the related records were sealed pursuant to Family Court Act § 375.1 and CPL 160.50.
Petitioner in this article 78 proceeding sought Probation's compliance with the requirements of Family Court Act § 375.1 and CPL 160.50 to keep the records of his favorably terminated cases sealed and not to reveal the existence and contents of those materials. He also asked for an order requiring Probation to delete from the I & R all references to information acquired from sealed records.
Probation claimed the invoked sealing provisions were inapplicable because it did not derive any information submitted to the Family Court from a review of sealed court records, but rather acquired the data from "indexed case record materials" or from an "administrative folder" it maintained for itself. Alternatively, Probation argued that because it is obliged to supervise petitioner and to report on his conduct to the Family Court at the dispositional phase of the latest juvenile proceeding the sealing provisions did not bar it from disclosing the juvenile's past conduct to the Family Court.
Supreme Court granted the petition to the extent of ordering Probation to redact from its I & R the notations regarding *665 the dates of arrest, docket numbers and dispositions of the favorably terminated cases, as well as the characterization of the two most recent charges as "robbery related" (133 Misc 2d 98, 102). The court permitted the recitation of the facts underlying the arrests, as contained in an accompanying psychological report because, while the mere date of and charge on an arrest are not sufficiently material and relevant to be admitted in the dispositional hearing, the facts underlying these prior acts were (see, Family Ct Act § 350.3 [1]).
The Appellate Division affirmed because the Family Court Act § 375.1 protection of "`the rights of the individual from the adverse consequences of allegations that do not result in conviction' would be vitiated if the Department of Probation were permitted to refer to its official records pertaining to such prior sealed cases in a subsequent investigation and report" (133 AD2d 631, 632 [citation omitted]).
We are of like mind that the sealing provisions of Family Court Act § 375.1 are violated when a public agency, privy to and maintaining records and information concerning cases terminated in the juvenile's favor, divulges information resurrected from otherwise sealed records. It is also correct, however, that the background facts to such matters, if relevant and material, may be disclosed in an I & R prepared for a juvenile dispositional hearing if derived from sources other than sealed records and materials.
Family Court Act § 375.1 (1) is unambiguous in its direction that "[u]pon [favorable] termination of a delinquency proceeding * * * the court shall enter an order which shall immediately be served * * * upon the heads of the appropriate probation department * * * directing that all official records and papers * * * relating to the arrest, the prosecution and the probation service proceedings, including all duplicates or copies thereof, on file with the * * * probation service * * * be sealed and not made available to any person or public or private agency."
Courts should construe clear and unambiguous statutes so as to give effect to the plain meaning of the words used (Doctors Council v New York City Employees' Retirement Sys., 71 N.Y.2d 669, 674-675). Where a statute describes the particular situations in which it is to apply and no qualifying exception is added, "`an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded'" (Patrolmen's Benevolent Assn. v City of New York, 41 N.Y.2d 205, 208-209). *666 The words and purport of Family Court Act § 375.1 (1) are plain. Moreover, statutory construction, even when required with materials beyond the facial words of the statute, is rarely fortified by such a powerful set of support rods.
The provisions of this sealing statute were patterned after those in CPL 160.50. The dissent even acknowledges the State is not obligated to provide identical statutory protections in adult and juvenile proceedings. But when the Legislature does grant a protection in this area, the courts do not have a policy choice to override it or circumscribe it. Thus, we note that the Family Court Act version applicable here includes a thicker cocoon of protection which may be appreciated from these distinguishing features: the records of probation agencies are explicitly included as materials to be sealed under the Family Court Act provision; the CPL provision permits exceptional disclosure, despite sealing, to law enforcement agencies and the Family Court Act provision does not; and the statute applying to adult offenders expressly allows Probation Department use of sealed records when the accused is under supervision and the records concern an arrest occurring during the term of supervision (see, CPL 160.50 [1] [d] [vi]; Sobie, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 375.1, at 591).
The Legislature has recently reinforced its distinctive coverage of the two categories of offenders, adult and juvenile, by twice failing to enact proposed amendments to the Family Court Act § 375.1 (3) that would have authorized Probation Departments to use information included in sealed records and papers for the purpose now claimed to be authorized by what at best may be described as strained interpretation of existing law (see, A. 11351, introduced May 29, 1986; S.19, introduced Jan. 7, 1987). The Legislature's rejection of A. 11351 and passage of a revised version of S.19, which excised an express sealing exemption (see, L 1987, ch 419), is confirmatory of previous legislative expression and intent not to permit Probation's use of sealed records for purposes of preparing I & R reports (see, Matter of Knight-Ridder Broadcasting v Greenberg, 70 N.Y.2d 151, 157). Notably, we have previously relied on the fact that "the Legislature did not expand the scope of the exclusions from a sealing order when it amended the statute" as evidence that the narrow exceptions to the statute should not be interpreted to pierce the *667 statute's protective crust (Matter of Hynes v Karassik, 47 N.Y.2d 659, 663).
The contextual landscape for our decision in this case is also dotted with apparently persistent judicial prohibition of agency access to sealed juvenile data (see, Matter of Wayne M., 135 Misc 2d 648; Matter of David H., 124 Misc 2d 190; Matter of Robert S., 123 Misc 2d 225; Matter of Steven R., 121 Misc 2d 245). When the Legislature, with presumed knowledge of the judicial construction of a statute, foregoes specific invitations and requests to amend its provisions to effect a different result, we have construed that to be some manifestation of legislative approbation of the judicial interpretation, albeit of the lower courts (Matter of Knight-Ridder Broadcasting v Greenberg, 70 N.Y.2d 151, 157, supra).
Returning to the statute itself, we also discover that the narrow scope of the only two statutory exceptions to Family Court Act § 375.1 reinforces a fortiori the view that the Legislature intended the sealing provision to block the release and use of protected materials even for purposes of subsequent dispositional hearings. The exceptions permit only the juvenile subject of the records, or a designated agent, future access and also allow probation service access to its own sealed records and papers for the limited purpose of making adjustment determinations under Family Court Act § 308.1 (4) (see, Family Ct Act § 375.1 [3]). Significantly, the Legislature excluded from that exceptional authorization in the very same body of law any use of sealed records to include probation investigations under Family Court Act § 351.1. The ejusdem generis rule of construction has particular pertinency here.
The Legislature has even expressly prohibited criminal court access to sealed Family Court and related police records at time of sentence (Family Ct Act §§ 381.2, 381.3; see, People v Hunter, 88 AD2d 321, 323). This extra measure of protection ensures that the express exception in the CPL sealing statute not be used in an adult criminal proceeding to access sealed Family Court records; it also eliminates a potential ambiguity and conflict in the meshing of the two bodies of law. Similarly, when an action is favorably disposed of in an adult proceeding the records are sealed under CPL 160.50, the arrest and prosecution are deemed a nullity, the accused is restored to the status occupied before arrest, and unless specifically required by statute, or directed by a superior court, the accused is not required to divulge information regarding the favorably *668 terminated action (CPL 160.60). This statutory safety net protecting adults ensures that records and materials generated from an arrest and a favorably terminated proceeding are eliminated as facets of the accused's criminal pedigree (see, Governor's Approval Mem, L 1976, ch 877, 1976 McKinney's Session Laws of NY, at 2451; Family Ct Act § 351.1; 9 NYCRR 350.7). It would be regressive to bestow such sweeping beneficial sealing protections on adult offenders while subjecting juvenile delinquents to the devastating prejudice of consideration of sealed data at their dispositional hearings.
In that regard, CPL 160.50 (1) (d) (vi) was not intended to permit Probation access to sealed criminal court records and materials so that they could subsequently be disclosed to yet another public entity, even the Family Court, to potentially serve as the basis for sanction enhancement on a wholly unrelated charge. Access was contemplated under the CPL so as to permit enhanced supervision, including the potential for probation revocation for the very act underlying the arrest which resulted in sealing (see, L 1986, ch 294, Governor's Bill Jacket, July 15, 1986 letter from Senator Mega, bill sponsor, to Evan Davis, counsel to the Governor; June 26, 1986 letter from Assemblyman Feldman, bill sponsor, to Governor Cuomo). While we decide this case on statutory analysis only, the proposed use here, in the dispositional phase of an unrelated Family Court proceeding, while not constitutionally protected, contradicts an articulated rationale for the enactment of the sealing statutes  the "presumption of innocence" (see, Governor's Approval Mem, L 1976, ch 877, 1976 McKinney's Session Laws of NY, at 2451). Moreover, these statutes are not, as the dissent suggests, designed merely to prohibit general "public scrutiny" of favorably terminated proceedings. Their reach is much broader and specific  to preclude access by those, especially in government and bureaucracy, who might otherwise prejudicially use rightfully protected information. For, by definition for these purposes, accusations not proven and dismissed for whatever reason are not prior "criminal conduct" and have no need of "immunity" (dissenting opn, at 671).
It is useful at this point also to state briefly what this case is not about  the inherent authority of courts over their own records  despite the dissent's reliance on that theory. That issue has not been advanced by the parties and would be dubious authority in any event to override so clear a legislative policy direction. This case also cannot be about the *669 sternly rejected pre-Gault paternalism which deprived youngsters of rights they would otherwise enjoy (see, In re Gault, 387 US 1). Nor finally can the case be about a rule, as Probation urges, requiring petitioner to show what may be characterized as irreparable harm. First, that would turn the protective statute on its head. Second, the harmful and prejudicial consequences at the dispositional phase would self-evidently satisfy that inverted burden  a rule we do not embrace in any event  because the wrongful use of sealed data of this kind would disqualify the petitioner, almost automatically, from consideration, for example, of the least restrictive placements that he might otherwise receive. In this connection, the presumption of innocence directed usually at pending charges can surely have been viewed by the Legislature as even more germane in relation to favorably terminated matters.
In sum, whatever the judiciary's inherent powers, they cannot rescue Probation in these matters where, as here, the Legislature has expressly made its purpose clear (see, Matter of Dorothy D., 49 N.Y.2d 212, 215; Matter of Richard S. v City of New York, 32 N.Y.2d 592, 595; compare, Matter of A. G. Ship Maintenance Corp. v Lezak, 69 N.Y.2d 1, 6; County of Oneida v Berle, 49 N.Y.2d 515, 522-523).
It is of no consequence that the source of the arrest and prosecution data, included within the I & R, was Probation's own indexed case record materials, cumulative case records, or administrative records. Indeed, this makes matters worse and more disturbing because it unmasks a concededly regularized Big-Brother-like evasion of the prophylactic law itself and of particular sealing orders (see, Matter of Todd H., 49 N.Y.2d 1022). This audacious violation of petitioner's statutory rights  and apparently those of countless others  in maintaining separate "unsealed" files cannot be blinked  and certainly not by a strained statutory interpretation. That would be turning the "blind eye" and would wrongly place the Probation Department above the law. Even laudable goals and helpful tools cannot justify forbidden means.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge WACHTLER (dissenting).
Statutes sealing the records of juvenile proceedings from public scrutiny when the charges have been dismissed on procedural grounds should not be interpreted to deny the court itself access to the records when called upon to determine the appropriate degree of *670 supervision for a juvenile offender. When the Legislature imposed on the courts the obligation to make an intelligent and fully informed determination based on the juvenile's background and "previous conduct" (Family Ct Act § 351.1), it could not have intended the court to ignore what its own records show regarding the juvenile's prior involvements with the law, which is a legitimate and traditional basis of inquiry at the dispositional phase. Thus when the court in this case ordered the Probation Department to investigate and report on the juvenile's background, it was appropriate for the Department to reveal the existence and contents of the sealed proceedings in which the charges had been dismissed on procedural grounds without ever being factually resolved. Accordingly the petition, seeking to have these references deleted, should have been dismissed.
As the majority notes, the issue in this case does not involve constitutional rights or principles, it only involves statutory interpretation. At the "sentencing" phase, courts have traditionally taken into account the defendant's prior criminal or bad acts, including those which never led to a conviction (People v Felix, 58 N.Y.2d 156; United States v Sweig, 454 F.2d 181; United States v Cardi, 519 F.2d 309). Even in death penalty cases, there is no constitutional impediment to considering such factors provided the defendant is informed of the acts alleged and is afforded an opportunity to dispute or explain them (Gardner v Florida, 430 US 349; People v Felix, supra).
The rule is no different in juvenile proceedings. The Legislature has provided that before the court makes a final disposition it should review the probation report showing the juvenile's history and "previous conduct" (Family Ct Act § 351.1) and has authorized the court in the broadest terms to consider all "material and relevant" evidence, even if it is incompetent or was unconstitutionally obtained (Family Ct Act § 350.3; see also, Sobie, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 350.3, at 502). In fact, in juvenile proceedings there is an even greater need for the court to be fully informed about the juvenile offender's prior actions in relation to the law.
In juvenile cases the "State has chosen to direct its efforts toward seeking and averting the cause of juvenile delinquency, on the premise that erring children, still in the formative years of their lives, will respond to remedial and *671 corrective efforts" (People v Oliver, 1 N.Y.2d 152, 161). The majority notes that in seeking this goal the State may not be so paternalistic as to deprive "youngsters of rights they would otherwise enjoy" (majority opn, at 669). It is true, of course, that the State may not deprive an accused juvenile of fundamental constitutional rights afforded to adults accused of criminal acts (In re Gault, 387 US 1). But the State is not obligated to provide identical statutory rights in juvenile and adult proceedings. The fact is that juvenile proceedings and adult criminal proceedings are governed by different statutes and the primary reason for the different statutory schemes is to provide a greater opportunity for rehabilitation in juvenile cases. It is not constitutionally objectionable or inconsistent with the progressive rehabilitation goals of juvenile proceedings to permit or require the court to take a closer look at a juvenile offender's background and prior involvements with the law before determining the appropriate degree of supervision. Indeed, this has been the modern trend.
There is nothing to indicate that the Legislature intended to reverse this trend when it adopted statutes sealing records of dismissed charges (CPL 160.50) and extended the benefits to those involved in juvenile proceedings (Family Ct Act § 375.1). These statutes generally prohibit public scrutiny of records in cases where the accused was found not guilty or the charges were dismissed on a number of procedural grounds. However, they do not provide immunity or prohibit a sentencing court from taking into account prior criminal conduct when charges were filed but later dismissed on procedural grounds. The majority recognizes that this is so when the court learns of the incidents from sources other than court records. It concludes, however, that the sealing statutes are so broadly worded as to prevent the court from consulting its own records to determine the existence of such incidents. Concededly, the statutes broadly provide that sealed records are not to be made available to "any person or public or private agency" (Family Ct Act § 375.1 [1]; CPL 160.50 [1] [c]) with a number of exceptions, none of which grant the Probation Department access to sealed records in connection with its sentencing role, although such amendments have been proposed to the Legislature with respect to juvenile proceedings (see, Governor's Proposed Juvenile Justice Reform Act of 1986). However, it does not necessarily follow from this, as the majority concludes, that the Legislature must have intended to deny the Family Court access to its own sealed records *672 when determining the appropriate supervision for a juvenile offender.
Although express legislative authority is required to permit the Probation Department, on its own initiative, to review sealed court records to determine, for instance, whether a person on probation has violated probation (CPL 160.50 [1] [d] [vi]), there is no need for such express authority or exception when the court reviews its own records, or directs the Probation Department to report on them, before imposing sentence or determining the appropriate disposition in juvenile cases.
The courts have inherent power over their records to seal them and to review them and in extraordinary cases to expunge them (Matter of Hynes v Karassik, 47 N.Y.2d 659, 664; Matter of Dondi, 63 N.Y.2d 331, 338-339; Matter of Dorothy D., 49 N.Y.2d 212; Matter of Henry v Looney, 65 Misc 759, 762-763). Indeed, one of the purposes of the sealing statutes is to extend the court's power to records in possession of other agencies which reflect the content of sealed court records (Matter of Dorothy D., supra, at 215; Matter of Wade v Department of Mental Hygiene, 49 N.Y.2d 947; cf., Matter of Todd H., 49 N.Y.2d 1022). But the sealing statutes have never been held to impair the power of the courts to review their own records in order to perform a peculiarly judicial act (Matter of Dondi, supra, at 338-339; Matter of Hynes v Karassik, supra, at 664-665). Thus statutes generally providing that sealed records should not be disclosed to "any person or public or private agency" (Family Ct Act § 375.1 [1]; CPL 160.50 [1] [c]) should not be interpreted to prohibit the court itself from reviewing its own records, or appointing the Probation Department to report on what they reflect, when the court is called upon to determine the appropriate degree of supervision for a juvenile offender. In fact, the only restriction the Legislature has imposed on the use of such sealed records at sentencing is found in section 381.2 of the Family Court Act, which simply prevents an "adult" court from reviewing the sealed records of dismissed juvenile proceedings when sentencing an adult.
In juvenile cases especially, the court should not be required to turn a blind eye to what its own records would reveal concerning the juvenile's prior involvements with the law. In the case now before us, much of the petitioner's prior court history was made available, in fragmented and perhaps distorted form, by the petitioner himself. Except for that circumstance all the court would know from the unsealed records is *673 that the petitioner is a one-time offender who committed truancy violations while on parole. In such a case it is unrealistic and potentially dangerous to expect the court to make an appropriate disposition without consulting its own sealed records, when those records would show that in little more than a year after he turned 14, the petitioner was arrested on four other occasions on charges never factually resolved because of procedural dismissals, and that the last two arrests for robbery-related charges occurred while on probation  indicating at least a basis for additional inquiry into the juvenile's activities and perhaps greater supervision of a youth who might truly need it.
Order affirmed, with costs.