[833 NE2d 698, 800 NYS2d 363]

In the Matter of KATHERINE B. et al., Appellants, v JOHN CATALDO et al., Respondents.

Argued June 2, 2005; decided July 6, 2005

### POINTS OF COUNSEL

*Law Offices of Stephen W. Edwards,* Brooklyn (*Stephen W. Edwards* of counsel), for appellants. I. Unsealing dismissed cases for sentencing purposes served no interest of justice since dismissed cases are a nullity which the court has held do not become part of an accused's criminal pedigree. (*Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662; *People v Villanueva,* 144 AD2d 285, 73 NY2d 897; *People v Key,* 45 NY2d 111; *Hollender v Trump Vil. Coop.,* 58 NY2d 420; *People v Smith,* 305 AD2d 432; *People v Ferere,* 294 AD2d 596; *People v Ramsey,* 288 AD2d 240; *People v Innis,* 288 AD2d 236; *People v Santiago,* 277 AD2d 258; *People v Varlack,* 259 AD2d 392.) II. The dismissal of appellants' CPLR article 78 petition was procedural error as the petition fell squarely within article 78 jurisprudence. (*Matter of Lee v County Ct. of Erie County,* 27 NY2d 432; *Matter of Culver Contr. Corp. v Humphrey,* 268 NY 26; *Matter of Blake v Hogan,* 25 NY2d 747; *Matter of Watts v Supreme Ct. of State of N.Y.,* 36 AD2d 17, 28 NY2d 714; *La Rocca v Lane,* 37 NY2d 575, 424 US 968; *People v Hines,* 260 AD2d 646; *Matter of Wiley v Altman,* 52 NY2d 410; *Matter of Barber v Rubin,* 72 AD2d 347; *Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662.) III. Allowing the unsealing ex parte violated appellants' fundamental right to be present at proceedings affecting guilt or punishment. (*People v Antommarchi,* 80 NY2d 247; *People v Sloan,* 79 NY2d 386; *People v Blount,* 116 Misc 2d 975.)

*Robert M. Morgenthau, District Attorney,* New York City (*Larry*

*A. Glasser, Mark Dwyer* and *Sean J. Sullivan* of counsel), for respondents. I. CPLR article 78 is not a proper procedure for petitioners to seek relief. (*Matter of Lipari v Owens,* 70 NY2d 731; *Matter of Legal Aid Socy. of Sullivan County v Scheinman,* 53 NY2d 12; *La Rocca v Lane,* 37 NY2d 575; *Matter of State of New York v King,* 36 NY2d 59; *Matter of Hynes v Karassik,* 47 NY2d 659; *People v Anonymous,* 7 AD3d 309; *People v Public Serv. Mut. Ins. Co.,* 37 NY2d 606; *People v Purley,* 297 AD2d 499; *Matter of Veloz v Rothwax,* 65 NY2d 902; *Matter of Dondi v Jones,* 40 NY2d 8.) II. Regardless of whether petitioners raise these issues in a CPLR article 78 proceeding or on direct appeal, respondents' actions were entirely proper. (*Hollender v Trump Vil. Coop.,* 58 NY2d 420; *Matter of Joseph M.,* 82 NY2d 128; *Matter of Hynes v Karassik,* 47 NY2d 659; *Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662; *People v Patterson,* 78 NY2d 711; *Matter of Wayne M.,* 121 Misc 2d 346; *People v Villanueva,* 144 AD2d 285; *People v Naranjo,* 89 NY2d 1047; *People v Mason,* 299 AD2d 724; *People v Bratcher,* 291 AD2d 878.) III. Petitioners' arguments that their due process and privacy rights were violated and that CPL 160.50 is unconstitutional are unpreserved and without merit. (*People v Kello,* 96 NY2d 740; *People v Salazar,* 136 Misc 2d 992; *People v Blount,* 116 Misc 2d 975; *People v Antommarchi,* 80 NY2d 247; *People v Sloan,* 79 NY2d 386.)

*Legal Aid Society,* New York City (*Steven Banks* and *Robert C. Newman* of counsel), amicus curiae. I. The unsealing of the records of appellants' previously dismissed cases, under the circumstances presented by this appeal, clearly violated New York law. (*Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662; *Matter of Hynes v Karassik,* 47 NY2d 659; *People v Felix,* 58 NY2d 156; *Matter of New York State Police v Charles Q.,* 192 AD2d 142; *Matter of Police Commr. of City of N.Y. v Patrick M.,* 131 Misc 2d 695; *People v Blount,* 116 Misc 2d 975; *People v Castillo,* 80 NY2d 578; *Matter of Joseph M.,* 82 NY2d 128; *Matter of Dondi,* 63 NY2d 331; *People v Perez,* 195 Misc 2d 171.) II. CPLR article 78 is an appropriate vehicle for granting appellants relief from Justice Cataldo's unlawful order unsealing the records. (*Matter of Pirro v Angiolillo,* 89 NY2d 351; *Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662; *Matter of Rush v Mordue,* 68 NY2d 348; *Matter of Dondi v Jones,* 40 NY2d 8; *People v Michael,* 48 NY2d 1.) III. This Court should hold that the Criminal Court, when sentencing appellants, may not consider any information or allegations derived from the improperly unsealed case files. (*People v*

*Naranjo*, 89 NY2d 1047; *Matter of Alonzo M. v New York City Dept. of Probation*, 72 NY2d 662; *People v Patterson*, 78 NY2d 711.)

## OPINION OF THE COURT

READ, J.

This appeal calls upon us to decide whether CPL 160.50 (1) (d) (ii) authorizes a superior court to make sealed records available to a prosecutor for purposes of making sentencing recommendations. In light of the limitations placed by the Legislature on unsealing, we conclude that it does not.

### I.

On March 26, 2003, the four petitioners participated in a political demonstration near the intersection of Fifth Avenue and 47th Street in Manhattan, staged at the height of the morning rush hour. Wearing matching shirts with identical, preprinted signs and dabbed with fake blood, 11 demonstrators lay down across Fifth Avenue, their arms yoked together by an elaborate system of custom-cut plastic piping, metal chains, carabiners and handcuffs. A demonstrator at one end of this human chain padlocked his free hand around a fixed garbage can on the sidewalk. The demonstrator at the other end was in the midst of doing the same thing when police arrived. Other demonstrators stood in the street, holding up stop signs in the face of oncoming traffic. Demonstrators also positioned a "bulldozer" that they had fabricated out of wood and metal in the center lanes of Fifth Avenue, and one of the petitioners padlocked herself to it.

This eye-catching scene, orchestrated to take New York City officials by surprise, effectively shut down Fifth Avenue, creating massive traffic disruptions in midtown Manhattan and diverting large numbers of police and other public safety officials from their regular duties. In order to clear the street, emergency services officers were forced to use electric saws to cut through the plastic piping linking the human chain.

Nearly a year later, on March 22, 2004, and following a weeklong trial in Criminal Court, a jury found each of the four petitioners and 12 fellow demonstrators guilty of one count of obstructing governmental administration in the second degree (Penal Law § 195.05) and two counts of disorderly conduct (Penal Law § 240.20 [5], [6]). Obstructing governmental administration in the second degree is a class A misdemeanor

punishable by a sentence of imprisonment not to exceed one year; disorderly conduct is a violation punishable by a sentence of imprisonment not to exceed 15 days.

Criminal Court adjourned sentencing and directed the People to supply it with updated criminal histories or "rap sheets" in support of their sentencing recommendations. To comply with Criminal Court's instruction, the assistant district attorney conducted a computer search, which revealed numerous docket numbers for prior criminal cases involving petitioners. The search results, however, included no factual information relating to these cases, and, in fact, indicated that the records were sealed. Accordingly, on March 29 and March 31, 2004, the People moved ex parte in Supreme Court pursuant to CPL 160.50 (1) (d) (ii) and 160.55 (1) (d) (ii) to unseal records corresponding to docket or arrest numbers associated with petitioners.

The People advised Supreme Court that justice required the unsealing of petitioners' records because "[t]he details of these matters, and their dispositions, [were] pertinent and relevant information for the [Criminal] Court to consider in determining an appropriate sentence," citing CPL 380.50 (1) and 390.40 (1). Supreme Court granted the People's motions and issued the unsealing orders. The unsealed records related to convictions for violations, adjournments in contemplation of dismissal and procedural dismissals.

On April 9, 2004, the People submitted sentencing recommendations to Criminal Court for petitioners as well as for the 12 other convicted demonstrators. The People informed the court of more than 20 prior acts of civil disobedience undertaken by petitioners, based principally on allegations taken from complaints filed with Criminal Court at petitioners' arraignments in the unsealed cases. The People argued that, in light of these past experiences, petitioners certainly knew that their actions on March 26, 2003 would disrupt and affect thousands of people and force the police department to expend substantial resources to apprehend them. Accordingly, the People differentiated between petitioners and other convicted demonstrators, recommending an unspecified period of incarceration as part of petitioners' sentences.

By order to show cause, petitioners on April 28, 2004 asked Supreme Court to vacate its unsealing orders, to reseal petitioners' records, and to preclude the People from using information obtained from the sealed records in the pending Criminal Court

sentencing. On May 14, 2004, Supreme Court issued a written decision and order rejecting petitioners' contention that CPL 160.50 (1) (d) (ii) and 160.55 (1) (d) (ii) authorize unsealing only "for investigatory purposes rather than to assist a court in a sentencing proceeding upon a subsequent conviction." Supreme Court cautioned, however, that "[i]t remains the domain of the sentencing judge . . . to ascertain . . . whether the factual allegations obtained from the unsealed dockets meet[ ] the test of reliability and accuracy necessary to merit any consideration by that court."

On May 23, 2004, petitioners filed a CPLR article 78 petition[1] in the Appellate Division, which the Court dismissed on September 21, 2004 "without prejudice to raising the same or similar arguments on direct appeal from a judgment of conviction" (10 AD3d 544 [1st Dept 2004]). We subsequently granted leave to appeal,[2] and now reverse.

## II.

As relevant to this appeal, CPL 160.50[3] provides that upon termination of a criminal action or proceeding in favor of the

---

1. CPLR article 78 is not the proper procedural vehicle for the relief sought here because petitioners do not challenge a public official's ministerial acts or actions taken in excess of authority (*see Matter of Crain Communications v Hughes*, 74 NY2d 626 [1989]). As the People acknowledge, petitioners could have properly sought judicial review of the unsealing of petitioners' records by timely civil appeal (*see Matter of Hynes v Karassik*, 47 NY2d 659, 661 n 1 [1979]; *see also People v McLoughlin*, 65 NY2d 687 [1985]). Contrary to the People's position, however, the initial unsealing orders were not the proper appealable papers because they were obtained by ex parte application (*see Sholes v Meagher*, 100 NY2d 333, 335 [2003]). In order to create an appealable paper, a motion on notice to vacate was needed (*see* Siegel, NY Prac § 244, at 412 [4th ed]), and petitioners promptly made such a motion. Petitioners filed their CPLR article 78 petition nine days after Supreme Court issued its decision and order denying their motion to vacate and reseal. Moreover, petitioners served the petition on the same individuals who would have been parties on appeal and included the same materials in the petition as would have comprised the appellate record. In light of these particular circumstances, we have converted this CPLR article 78 proceeding into the proper form, which is a civil appeal (*see* CPLR 103 [c]).

2. The Appellate Division granted petitioners a stay of sentencing pending its decision. The People consented to a continuing stay pending resolution of this appeal.

3. As previously noted, the People also sought and obtained unsealing orders pursuant to CPL 160.55 (1) (d) (ii). CPL 160.55 covers the sealing of arrest and prosecution records related to convictions of petty offenses with some exceptions. Petitioners do not on this appeal contest any unsealing orders issued by Supreme Court pursuant to CPL 160.55 (1) (d) (ii), which is identical to CPL 160.50 (1) (d) (ii).

accused, "the record of such action or proceeding shall be sealed" by the clerk of the court "unless the court has directed otherwise" in the interests of justice upon motion of the district attorney or on its own motion and for reasons stated on the record (CPL 160.50 [1]).[4] The sealing covers "all official records and papers, including judgments and orders of a court but not including published court decisions or opinions or records and briefs on appeal, relating to the arrest or prosecution, including all duplicates and copies thereof, on file with the division of criminal justice services, any court, police agency, or prosecutor's office" (CPL 160.50 [1] [c]; *see Matter of Harper v Angiolillo*, 89 NY2d 761 [1997] [there are no bright-line rules defining those items qualifying as "official records and papers"]).

"The sealing requirement was designed to lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused" (*Harper*, 89 NY2d at 766). "That detriment to one's reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions. The statute's design is to lessen such consequences" (*Hynes*, 47 NY2d at 662 [citations omitted]).

Consistent with this design and the "plain intendment of the statutory scheme," the *"general proscription* against releasing sealed records and materials [is] subject only to a few narrow exceptions"* (*Matter of Joseph M. [New York City Bd. of Educ.]*, 82 NY2d 128, 134 [1993] [confining inherent judicial authority

---

4. As originally enacted (*see* L 1976, ch 877), section 160.50 called for sealing unless the district attorney moved to prevent it or another criminal action or proceeding was pending against the accused. When the Legislature amended the statute in 1977 to correct various deficiencies and inconsistencies, the broad authorization for a court sua sponte to prevent sealing was substituted for the exception to sealing where there was a pending criminal action or proceeding (*see* L 1977, ch 905, § 1; Governor's Program Bill Mem, Bill Jacket, L 1977, ch 905 ["The determination of this fact (that another criminal action is pending) is a difficult one and the statute offers no guidance as to who bears the burden of presenting this evidence to the court. As a result, many judges refuse to enter seal and return orders because there may be an action pending against the defendant"]). Vesting courts with discretion to preclude sealing in the interests of justice was not universally applauded (*see* Letter from Assemblyman Richard N. Gottfried to Honorable Judah Gribetz, Counsel to the Governor, July 21, 1977, Bill Jacket; Letter from Milton Beller, Legislative Director, The Legal Aid Society, to Honorable Judah Gribetz, Counsel to the Governor, July 28, 1977, Bill Jacket).

to unseal records, which exists in the absence of statutory authorization and was recognized in *Hynes* and endorsed in *Matter of Dondi* (63 NY2d 331 [1984]), to Appellate Division's responsibility for discipline of attorneys pursuant to Judiciary Law § 90]; *see also Harper*, 89 NY2d at 767 ["CPL 160.50 balances the rights of a former defendant to restrict and obtain access to official records and papers in favorably terminated criminal proceedings, against the interests of various law enforcement agencies and representatives in the same materials," and "strikes the balance by requiring sealing in a wide variety of contexts and providing for the disclosure of sealed files in only limited circumstances"]).

Accordingly, in addition to the accused or his designated agent, a court may make sealed records available only to a "prosecutor[5] in any proceeding in which the accused" has moved for an adjournment in contemplation of dismissal in a case involving marijuana charges below felony grade (CPL 160.50 [1] [d] [i]), a benefit that the accused may obtain only once (*see* CPL 170.56, 210.46); to "a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires" disclosure (CPL 160.50 [1] [d] [ii]); to state or local gun licensing agencies when the accused applies for a gun license (CPL 160.50 [1] [d] [iii]); to the New York State Division of Parole when the arrest occurred while the accused was under parole supervision (CPL 160.50 [1] [d] [iv]); to the prospective employer of a police officer or peace officer, provided that the applicant shall be furnished a copy of all records obtained and given an opportunity to explain (CPL 160.50 [1] [d] [v]); and to any probation department responsible for the accused's supervision when the arrest occurred (CPL 160.50 [1] [d] [vi]).

■ These six statutory exceptions are precisely drawn. This underscores the Legislature's commitment to prohibiting disclosure of sealed records—once initial sealing has not been forestalled by the court in the interests of justice—except where the statute explicitly provides otherwise. Thus, this case boils down to whether the "law enforcement agency" exception in CPL 160.50 (1) (d) (ii) is broad enough to encompass an ex parte request by a prosecutor to unseal records for purposes of making sentencing recommendations. We conclude that it is not.

---

5. CPL 1.20 (31) defines a "[p]rosecutor" as "a district attorney or any other public servant who represents the people in a criminal action."

This exception allows sealed records to be made available to a "law enforcement agency," a term undefined in section 160.50 and in CPL 1.20, which includes terms of general usage in the chapter. Within section 160.50 itself, the term "law enforcement agency" always appears in conjunction with the terms "police department" and/or "the division of criminal justice services," except in subdivision (1) (d) (ii) (*see e.g.* CPL 160.50 [1] [clerk of court must give notice of favorable termination to "the commissioner of the division of criminal justice services and the heads of all appropriate police departments and *other* law enforcement agencies" (emphasis added)]; *see also* CPL 160.50 [1] [a], [b]; [3] [h], [i]). The term "law enforcement agency" therefore includes law enforcement entities in addition to police departments and the Division of Criminal Justice Services.

The legislative history of section 160.50 (1) (d) confirms that a broad range of law enforcement entities have been viewed as eligible to make ex parte motions to superior courts for unsealing orders for a variety of law enforcement purposes. In fact, the burden of proceeding under CPL 160.50 (1) (d) (ii) is what prompted the Legislature to carve out the exceptions in CPL 160.50 (1) (d) (iv), (v) and (vi).[6] Proponents of these three exceptions successfully argued that they should enjoy automatic exemption because evaluating applicants for police or peace officer positions or keeping tabs on parolees and probationers required routine access to sealed records, and resort to the "law enforcement agency" exception was time-consuming and unnecessary (*see e.g.* Mem of Division of Parole, Bill Jacket, L 1981, ch 122 [with responsibility for roughly 19,000 parolees or conditional releasees annually, "the present provision for obtaining (sealed) records (under CPL 160.50 [1] [d] [ii]) . . . is cumbersome, time-consuming and an unreasonable burden"]; *see also* Letter from Suffolk County Deputy County Executive Howard DeMartini to Gerald C. Crotty, Counsel to the Governor, June 6, 1985, Bill Jacket, L 1985, ch 208, at 24 ["To perform an adequate investigation of the applicant (for a police officer position), all pertinent information should be made available . . . . However, under existing law, an applicant can have sealed court records kept out of the legal reach of the (Suffolk County Police Department Investigation) Unit. If the Unit wishes to see the sealed records, they must get special court authorization for

---

**6.** The Legislature amended section 160.50 (1) (d) in 1981 to add clause (iv) (*see* L 1981, ch 122, § 1); in 1985 to add clause (v) (*see* L 1985, ch 208, § 1); and in 1986 to add clause (vi) (*see* L 1986, ch 294, § 1).

each case"]; Letter from Assemblyman Daniel Feldman to Governor Mario M. Cuomo, June 26, 1986, Bill Jacket, L 1986, ch 294, at 10 ["Information contained in these (sealed) records is often relevant to determinations concerning the conduct of the individuals whose supervision is the responsibility of the probation departments, and immediate access would greatly enhance the value to (*sic*) this information. This is especially the case when a 'violation of probation' proceeding is being contemplated"]).

The statute's provisions strongly suggest that its primary focus is the unsealing of records for investigatory purposes. By way of analogy, for example, applications for eavesdropping or video surveillance warrants—always used as investigative tools and always filed prior to commencement of a criminal proceeding—are similarly directed to "a justice . . . upon ex parte application" (CPL 700.10 [1]). The same is true for applications for a pen register and trap and trace devices (*see* CPL 705.15 [1]). More to the point for purposes of this appeal is the contrast between CPL 160.50 (1) (d) (i) and CPL 160.50 (1) (d) (ii). The former authorizes disclosure to a "prosecutor" in a "proceeding"; the latter simply to a "law enforcement agency"; the word "proceeding" does not appear in clause (ii). Thus, the Legislature has limited a court's authority to make sealed records available to a prosecutor after commencement of a criminal proceeding to the singular circumstance delineated in CPL 160.50 (1) (d) (i)—where the accused has moved for an adjournment in contemplation of dismissal in a case involving marijuana charges below felony grade, a benefit that an accused may obtain only once.

Accordingly, the order of the Appellate Division should be reversed, without costs, the unsealing orders vacated and the records resealed.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and R.S. SMITH concur.

Order reversed, etc.