OPINION OF THE COURT
James C. Harberson, Jr., J.
Issue
CPL 160.55 (1) provides for an automatic notification by the Court Clerk to various agencies that, based upon a conviction of a violation reduced from the original criminal charge, all records should be disposed of and sealed as provided by statute “unless the district attorney upon motion with not less than five days notice ... or the court on its own motion with not less than five days notice . . . determines that the interests of justice require otherwise,” so the defendant may be heard on the issue.
The defense argues that because the five days’ notice was not given before the defendant entered a plea to the reduced charge and the motion was made only after the plea to the violation had been entered it should be considered untimely and the request be denied by the court. The People argue that the request was timely and the motion be considered.
Decision
CPL 160.55 states that “[u]pon the termination of a criminal proceeding” the automatic notification by the Court Clerk shall occur unless a five-day notice of a motion not to seal such records is given by the court or prosecutor. CPL 1.20 (16) and 160.50 (1) taken together provide that a “termination of a criminal action” (CPL 160.50 [1]) occurs “with the imposition of sentence” (CPL 1.20 [16] [c]). Inasmuch as the court has yet to impose sentence, stayed on its own volition on November 12, 2007 to address the opposition to the People’s request to not seal the record under CPL 160.55 (1), no sealing can occur automatically so the issue of denying the prosecutor’s motion under CPL 160.55 (1) is moot being premature as the operation of the statute cannot yet take place.
Professor Peter Preiser (Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 160.50, at 713 [1992 ed]) observed:
“Note however that the 1991 amendment intro *324 duced a procedural inconsistency. Subdivision one retains the court’s authority to direct that the sealing process is not to take place in individual cases, if it determines that the interests of justice warrant denial of sealing. But any such direction requires a motion on five days notice to the defendant or to counsel. If the provision authorizing the court to deny the right to the benefits of the statute is to remain, the procedure should allow time for the motion prior to the clerk’s automatic initiation of the process.”
In his 2004 Practice Commentaries for the same section he said:
“In passing, note that the 1991 amendment introduced a minor procedural inconsistency. Thus, while requiring the clerk of the court to take sealing action ‘upon termination of the action or proceeding’, the procedure nevertheless creates a window for the district attorney or the court on its own motion to move to block that action upon five days advance notice to the defendant, which would then require further delay for a ruling. Presumably, this has worked out administratively, as research to date has not uncovered any case law pointing up a difficulty.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 160.50, at 607 [2004 ed].)
It is this “procedural inconsistency” at issue in this case, where on the one hand the clerk is directed by statute to automatically seal the case, while on the other hand it also provides for a five-day delay initially if a motion is made to not seal the records.
Professor Preiser’s recommendation in his 1992 Practice Commentaries was that if the provision to allow the “right to the benefits ... is to remain, the procedure should allow time for the motion prior to the clerk’s automatic initiation of the process” (at 713). Later in his 2004 Commentaries, the issue not having been addressed by legislation, he assumed the “gap” had been “worked out administratively” (at 607).
In 1980, two courts dealt with the timing of the five days’ minimum notice.
In People v Neuman (104 Misc 2d 324 [1980]), the court stated,
“First, as a threshold matter, the court would note *325 that CPL 160.50 does not require the prosecutor to move in opposition within any particular time period, but only that he give at least five days’ notice to the defendant that in his opinion the interests of justice do not call for sealing” (id. at 326).
In People v Schleyer (192 Misc 2d 113 [2002]), the court explained:
“Defendant contends that a charge ‘satisfied’ by a plea in another court is a termination of a criminal action in favor of the accused pursuant to CPL 160.50. Upon an adjudication in favor of the accused, the law requires that all records must be sealed unless the District Attorney demonstrates that ‘the interests of justice require otherwise’ (CPL 160.50 [1]). The records in this matter are not presently sealed.
“It should be noted that the mechanism for triggering the sealing, prior to the 1991 amendment, provided that the court was to enter an order to be served by the clerk of the court; the 1991 amendment eliminated the need for a judicial order to effectuate the sealing of records (see, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 160.50, at 713).” (Id. at 114.)
In People v Gartenberg (105 Misc 2d 657 [1980]), the court reviewed CPL 160.55 in response to the issues in that case which provides insight to deal with those raised by the defense in this case, even though the automatic sealing provision now a part of CPL 160.55 (1) was not yet part of the statute.
The Gartenberg court wrote,
“Subdivision 2, however, of CPL 160.55, the newly enacted law, states that where a person against whom a criminal action or proceeding was terminated by conviction of a traffic infraction or violation prior to the effective date of that section, that person may upon motion to the court upon not less than 20 days’ notice to the District Attorney, move for an order granting the relief referred to therein; and that such an order should be granted unless the District Attorney demonstrates to the satisfaction of the court that the interest of justice requires otherwise.
“The District Attorney herein argues in opposition to the within motion in that at the time the plea *326 bargaining was effectuated in the instant case the present law did not exist. Had the law been in existence, the People would have insisted upon a waiver of the sealing rights as is currently the policy of the District Attorney’s office, as part of the plea bargaining. The court cannot delve into the retrospective intentions which may have been included in the negotiations prior to the enactment of this law. The new law specifically states that such applications should be granted even for prior convictions unless the District Attorney demonstrates to the satisfaction of the court that in the interest of justice they require otherwise. More has to be shown to the court in each specific case for this court to avoid the consequences dictated by the newly enacted provisions, since the court must assume that the Legislature in making this provision retroactive would have considered that plea bargaining of prior matters may possibly have been dealt with differently although one cannot say positively what would have been the respective positions at the time without the new law being in effect.” (Id. at 658-659.)
In 2004, People v Anonymous (7 AD3d 309 [2004]) dealt with the interplay of the automatic sealing required under CPL 160.50 (1), an oral application by the prosecutor to oppose the sealing of the record, and the court’s conduct in response to the situation.
In People v Anonymous, the facts show that “immediately after a jury acquitted defendant, . . . the trial court, upon oral application of the People, stayed the sealing of the record for 30 days, without explanation and over the objection of defense counsel” who argued “that the order staying the record be vacated inasmuch as it failed to comply with the requirements of CPL 160.50” (id. at 310).
The Court ruled:
“We also find that the trial court improperly issued the initial order staying the sealing of defendant’s record immediately after his acquittal. CPL 160.50 (1) provides that following the acquittal of a defendant, the record is to be immediately sealed unless the People demonstrate that the interests of justice require that the sealing be stayed ‘upon motion with not less than five days notice’ to the defendant or defense counsel. Here, it is undisputed that neither *327 defendant nor his attorney was ever provided with the requisite five days’ notice. Furthermore, the People failed to demonstrate that the interests of justice warranted the issuance of the initial stay since OPMC’s investigation was not even mentioned until the People’s letter of December 9, 2003. Since the initial stay order was improperly issued, defendant’s record should have been sealed on the day of his acquittal and the People’s motion to extend the stay should have been deemed a motion to unseal a sealed record.” (Id. at 310.)
The court agrees with Professor Preiser’s conclusion that the five days’ notice of a motion to not seal the record is required to be given to the defendant either by the prosecutor or the court at any time prior to the defendant’s plea to a charge reduced from a crime to a violation under CPL 160.55 (1) to “allow time for the motion prior to the clerk’s automatic initiation for the process” (1992 Practice Commentaries at 713) at the “termination of a criminal proceeding” (CPL 160.55 [1]).
In this way no defendant will be “surprised” by a motion either by the prosecutor or the court to not seal a record one might reasonably expect to be sealed upon pleading to a violation reduced from a crime. A five-or-more-day adjournment to allow the defendant to respond and/or have a hearing on whether it would be in the interests of justice to not seal the record meets the goal of dealing with the issue so that once it is resolved for or against sealing the record, “upon the termination of the proceeding” by a subsequent plea and sentencing of the defendant who will know at the time he enters the plea whether the record will be or not be sealed under CPL 160.55 (1).
In this case, the defense argues that the People should be compelled to comply with the original plea bargain which the defendant accepted when she pleaded to a violation reduced from a criminal charge she was originally arrested and arraigned on before the court. The court disagrees.
In People v Gartenberg, one of the prosecutor’s arguments was that “at the time the plea bargaining was effectuated . . . , the People would have insisted upon a. waiver of the sealing rights as is currently the policy of the District Attorney’s office, as part of plea bargaining” (105 Misc 2d at 658-659). The court finds that this waiver should be negotiated between the prosecution and defense as part of the plea bargaining process. If the defense does not make this waiver by the prosecution a part of *328 the plea bargain, in light of the fact the statute allows the prosecution the power to oppose a sealing of the record, the defense cannot later claim the prosecutor cannot do what the law permits absent a waiver of the right by the prosecutor made a part of the plea bargain.
In the case where a court as part of a plea bargain promises a particular sentence to the defendant in return for the plea, if the court cannot later honor that promise then the defendant should be allowed to withdraw the plea. In this case this court, as is its regular practice in all cases, made no promises to the defendant as to sentence at the time she pleaded to a violation.
At the time of the plea to the violation the court did not address whether the defendant was aware that the court on its own motion could elect not to seal the record of the arrest for the criminal charge, which would otherwise be expected by the defense as an automatic result of a plea to a violation under CPL 160.55 (1).
The question is whether such a possibility should be brought to the defendant’s attention by the court, so the defense can be reminded of that possibility before a plea is entered and then elect to proceed without more unless some assurance is sought from the court that it will not elect to allow the record to be automatically sealed.
The answer to this question revolves around whether the court has a constitutional duty to do so to make sure the defendant “has a full understanding of what the plea connotes and its consequences” (People v Ford, 86 NY2d 397, 402-403 [1995]) based on whether not having the record of an arrest for a crime upon the plea to a violation sealed as provided under CPL 160.55 (1) might not occur automatically as expected, if the court and/or prosecutor may elect to oppose the sealing of the record in the “interests of justice.”
In People v Catu (4 NY3d 242 [2005]), the Court related that: “While a trial court has no obligation to explain to defendants who plead guilty the possibility that collateral consequences may attach to their criminal convictions, the court must advise a defendant of the direct consequences of the plea (see People v Ford, 86 NY2d 397 [1995]). Collateral consequences ‘are peculiar to the individual and generally result from the actions taken by agencies the court does not control’ (id. at 403). A direct consequence ‘is one which has a definite, immediate *329 and largely automatic effect on defendant’s punishment’ (id.) . . .
“ ‘A trial court has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences’ (Ford, 86 NY2d at 402-403 [citations omitted]). Although the court is not required to engage in any particular litany when allocuting the defendant, ‘due process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant’ (id. at 403 [citations and internal quotation marks omitted]).” (Id. at 244-245.)
The question of whether the court has a duty to inform, then, further rests upon whether the possibility the record may not be sealed could be a “direct consequence” of the guilty plea or whether only a “collateral” consequence of it. The answer to this lies in understanding the purpose of the sealing of the record of arrest for a crime under CPL 160.50 (1) or 160.55 (1) as a statutory right given to the defendant.
In People v Patterson (78 NY2d 711 [1991]), the Court explained:
“[T]he Legislature’s objective in enacting CPL 160.50 and the related statutes concerning the rights of exonerated accuseds was to ensure that the protections provided be ‘consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law’ (Governor’s Approval Mem, 1976 McKinney’s Session Laws of NY, at 2451). Indeed, the over-all scheme of the enactments demonstrates that the legislative objective was to remove any ‘stigma’ flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection (i.e., the presumption of innocence) to such accused in the pursuit of employment, education, professional licensing and insurance opportunities (see, People v Anderson, 97 Mise 2d 408, supra).” (Id. at 716.)
In Matter of Katherine B. v Cataldo (5 NY3d 196, 202 [2005]), the Court observed:
*330 “ ‘The sealing requirement was designed to lessen the adverse consequences of unsuccessful criminal prosecutions by limiting access to official records and papers in criminal proceedings which terminate in favor of the accused’ (Harper, 89 NY2d at 766). ‘That detriment to one’s reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate byproduct of even unsuccessful criminal prosecutions. The statute’s design is to lessen such consequences’ (Hynes, 47 NY2d at 662 [citations omitted]).”
It is clear that CPL 160.55 (1), which deals with a plea to a violation in satisfaction of a criminal charge, is based upon the “simple” rationale that
“since the defendant [pleaded] guilty ... to an offense for which he would not have been fingerprinted and photographed in the first place, he [is] entitled to the return of his fingerprints and photographs which were taken only because he was charged with a [crime] which was dismissed or covered upon the plea to said offense” (People v Flores, 90 Mise 2d 190, 193 [1977]).
Professor Preiser noted the difference between the effect of the sealing of the record under CPL 160.50 (1) and the statutory rights under CPL 160.55 (1).
“Under this section court records are not sealed. A defendant who qualifies is entitled only to destruction or return of prints and photographs in the same manner as one who has been acquitted as is provided in CPL § 160.50; and the Practice Commentary there for subdivision one (a), (b), (d) and (e) applies] here as well.
“Paragraph (c) of subdivision one is different from its counterpart in CPL § 160.50, thus reflecting a vital distinction between the rights granted here and those where defendant is acquitted. Judgments and orders of the court are not sealed because the defendant has been convicted and a record of that fact is needed. Accordingly, sealing under this section covers only the records of arrest and prosecution in the files of the Division of Criminal Justice, police agencies and prosecutor’s offices.” (Preiser, Practice Commentaries, McKin *331 ney’s Cons Laws of NY, Book 11 A, CPL 160.55, at 643-644 [2004 ed].)
In Matter of Abrams v Skolnik (185 AD2d 407 [1992]), the Court wrote that “[t]he well-established purpose of CPL 160.50 record sealing for persons acquitted of criminal charges is to ensure confidentiality and to protect the individual from the potential public stigma associated with a criminal prosecution” (id. at 408).
The court finds that for a defendant to have “a full understanding of . . . [the] consequences” of a plea (Ford, 86 NY2d at 402-403), that person must be informed by the court upon a plea to a violation that the statutory right to have the record in other agencies sealed outside the local criminal court under CPL 160.55 (1), while usually automatic, can nonetheless be not sealed should the court decide that the “interests of justice” prohibit the sealing.
There can be no argument that part of the punishment attendant upon the conviction of a crime is the “public stigma” attached to one so convicted — the “detriment to one’s reputation” (Matter of Katherine B., 5 NY3d at 202). This “public stigma” is activated upon one’s arrest for a crime and continues upon conviction of a crime one has pleaded to in court. The court finds that this is a “direct consequence” as it “is one which has a definite, immediate and largely automatic effect on defendant’s punishment” (Ford, 86 NY2d at 403).
The goal of CPL 160.50 (1) and 160.55 (a) is to remove public access to the record of arrest for a criminal charge in the case of acquittal or a plea to a violation from the records of various agencies — save the local criminal court in the case of a violation.
The effect is to eliminate the otherwise potential wide availability of the fact of the arrest for a criminal charge on statewide and/or national systems under the defendant’s name. To not allow this statutory right to a defendant leaves the “stigma” associated by the arrest for a crime as public knowledge. Therefore, in order to make an informed decision about the consequences of a plea to a violation, defendant should be informed that should the automatic sealing relief allowed under CPL 160.55 (1) not be granted if the “interests of justice” require otherwise, the actual “definite, immediate and largely automatic effect on [the] defendant’s punishment” (Ford, 86 NY2d at 403), in addition to the court’s *332 sentence on the violation conviction, will be the continued “public stigma” associated with the arrest for the criminal charge that has not been sealed from public access outside the local criminal court’s files.
That the fact of the arrest and underlying facts of the original crime which was reduced to a violation are maintained as a public record in the local criminal court under CPL 160.55 (1) does not affect the “direct consequence” issue because of the magnitude of public access to the record via the national databases if the original arrest is not sealed, versus the de minimis effect of public access to the information located only in a local criminal court’s files.
Conclusion
The court finds that the People and/or the court, at least five days before the defendant pleads to a violation, must give notice of a request “in the interests of justice” to not seal the record under CPL 160.55 (1), and once the plea to the violation has been entered, absent such five-day notice given beforehand, it will be deemed untimely.
The court finds that unless there is a waiver by the People of their right to oppose sealing the record under CPL 160.55 (1) as part of the plea bargain with the defendant to plead to a violation, the People may exercise that right to oppose the sealing of the record under CPL 160.55 (1) without violating the plea bargain.
The court finds that any time a defendant is to plead to a violation as a reduction from a criminal charge, the defendant must acknowledge that the original record of arrest for the crime may not be automatically sealed as provided under CPL 160.55 (1) so the defendant can make an informed decision about the possible consequences of the plea to a violation under People v Ford (86 NY2d 397, 403 [1995]).
In this case, as the defendant has not yet been sentenced so the criminal proceeding has not been “terminated” (CPL 1.20 [16]), and because the original plea bargain did not include a waiver by the People of their right to oppose the automatic sealing of the record under CPL 160.55 (1), the court would allow the five-day notice by the prosecutor filed on November 12, 2007 to be considered.
However, having researched the law and based upon People v Ford, and the court having failed to caution the defendant before her plea of guilty to a violation that the original criminal charge *333 and the record of the arrest for the same might not be sealed as provided under CPL 160.55 (1), the defendant may withdraw her plea to Penal Law § 240.20 because she may have lacked “a full understanding of what [might be] its consequences” (Ford, 86 NY2d at 402-403).