OPINION OF THE COURT
Michael A. Gary, J.
In papers filed by a Brooklyn Defender Services (BDS) attorney on behalf of his colleague in the State of Georgia, defense counsel brings an application pursuant to the Uniform Act to Secure Attendance of Witnesses from Without the State in Criminal Cases, CPL 640.10 and its sister provisions, Georgia Code Annotated §§ 24-10-90 to 24-10-97. The application consists of the certificate of materiality of Judge Brian Amero of the Superior Court of the Flint Judicial Circuit of Henry County in the State of Georgia, the affidavit of Gary Bowman, Esq., the Chief Flint Judicial Circuit Public Defender, and the affirmation of Timothy P Gumkowski of BDS. Judge Amero certified that a number of court files of the Criminal Court of the City of New York are necessary and material to the defense of a criminal proceeding in Henry County. (In addition to witnesses, CPL 640.10, the Uniform Act, also provides for the production of documents. [See Matter of Codey (Capital Cities, Am. Broadcasting Corp.), 82 NY2d 521 (1993).]) All of the criminal court files are sealed.
The Office of the District Attorney of Kings County was served with a copy of these papers. The People have represented to this court in a phone conversation on June 29, 2011 that they take no position on this motion.
To give some context to the issues raised in this application and to delineate what facts are relevant to their resolution it is necessary to discuss the certificate of materiality and the supporting affidavits. It is to be noted that the certificate issued by Judge Amero is prima facie evidence of all the facts stated therein (CPL 640.10 [2]; Codey at 526).
The criminal proceeding before Judge Amero in Henry County, Georgia, concerns Wanda Stanley. She is represented there by Gary Bowman, her chief trial counsel. Mr. Gumkowski serves as an associate defense attorney. Wanda Stanley is charged with malice murder and felony murder in the shooting *899 death of John Stanley. Ms. Stanley is described as the common-law wife of John Stanley, with whom she had several children. They lived together for a number of years in Brooklyn, New York. During that period, John Stanley was arrested on numerous occasions for domestic violence against Wanda Stanley and her children. They moved to Georgia just months before the shooting. The criminal court records sought by Ms. Stanley would support a battered woman’s defense.
In his memorandum of law, counsel acknowledges that CPL 160.50 (1) governs the unsealing of the records in issue but at the same time argues that the Court of Appeals has recognized the “inherent authority” of courts to release sealed records when the interest of justice mandates it, citing Matter of Hynes v Karassik (47 NY2d 659, 664 [1979] [special prosecutor, acting on behalf of grievance committee sought, pursuant to CPL 160.50, to unseal records of criminal trial in which attorney was acquitted]). He argues that the rationale for the enactment of CPL 160.50 is absent here and the statutory rights of the deceased to sealing are outweighed by Wanda Stanley’s constitutional rights to due process and to present a defense.
After a sealing order is issued, CPL 160.50 (1) (d) specifies a few narrowly defined instances when the sealed records may be released to enumerated categories of persons or agencies all affiliated with law enforcement.[2] It is obvious that Wanda Stanley *900 has no standing under CPL 160.50 to even seek an order to obtain sealed records of John Stanley.
Turning to Stanley’s “inherent authority” argument, the Court of Appeals certainly recognized in Hynes, “while cases might arise in which the exercise of a power to unseal would be appropriate” (at 664 [citation omitted]), and endorsed it in Matter of Dondi (63 NY2d 331 [1984]), the Court also confined it, by reasoning that the Appellate Division had inherent power to obtain sealed records pertaining to attorneys based upon its responsibility for overseeing and disciplining attorneys pursuant to Judiciary Law § 90 (2). (Matter of Joseph M. [New York City Bd. of Educ.], 82 NY2d 128, 133 [1993]; see also Matter of Katherine B. v Cataldo, 5 NY3d 196, 202-203 [2005].) Thus, counsel’s citations to attorney discipline cases (e.g. Matter of Anonymous, 164 AD2d 225 [1st Dept 1990], lv denied 77 NY2d 804 [1991]; Matter of Anonymous, 95 AD2d 763 [2d Dept 1983]) on the issue of the court’s inherent authority are inapposite here. Finally, counsel cites one appellate case for the proposition that this court has inherent power to unseal arising from the statutory language of CPL 160.50 (1) but this is only dicta. (Wilson v City of New York, 240 AD2d 266, 267 [1st Dept 1997] [motion court that had jurisdiction over the criminal matter has authority pursuant to CPL 160.50 (1) to stay sealing of the record in the interests of justice].)
This leaves only the consideration of Ms. Stanley’s inherent authority argument in relation to her constitutional rights to due process and to present a defense at trial. As counsel points out, there is no other way for Ms. Stanley to obtain the requested documents. Because John Stanley is deceased, a waiver from him for their release is not possible. (See Best v 2170 5th Ave. Corp., 60 AD3d 405 [1st Dept 2009].) Notwithstanding Ms. Stanley’s plight, a denial of her CPL 640.10 claim does not constitute a constitutional violation (People v McCartney, 38 NY2d 618 [1976]). More importantly, release of the records here does not implicate any of the policy considerations behind the enactment of CPL 160.50. As explained in Matter of Joseph M.:
*901 “CPL 160.50 was enacted in 1976 in the same reform legislation that added a provision to the Human Rights Law (now Executive Law § 296 [16]) making it an unlawful discriminatory practice for an employer, in connection with the employment of an individual, to inquire about or act adversely on any prior criminal accusation which had terminated in the employee’s favor. The purpose in adding these provisions to the Criminal Procedure Law and the Human Rights Law was to ensure that the protections provided to exonerated accuseds be ‘consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law’ (Governor’s Approval Mem, 1976 McKinney’s Session Laws of NY, at 2451). As we noted in People v Patterson:
“ ‘Indeed the over-all scheme of the enactments demonstrates that the legislative objective was to remove any “stigma” flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection (i.e., the presumption of innocence) to such accused in the pursuit of employment, education, professional licensing and insurance opportunities.’ ” (At 131-132 [citations and footnote omitted].)
Accordingly, it is appropriate to review those cases in which the Appellate Division has countenanced the unsealing of records in derogation of the requirements of CPL 160.50 but certainly in the interests of justice. In People v Outlaw (73 AD2d 677 [1979]), the Second Department found no impropriety when the trial court granted the motion of a defendant who had pleaded guilty to unseal the records of his codefendant who was acquitted after trial 10 months before the defendant’s plea and who was charged with acting in concert with the defendant. In People v Acevedo (176 AD2d 886 [1991], lv denied 79 NY2d 823 [1991]), the Second Department approved the trial court’s exercise of discretion in refusing to unseal the arrest records of two of the People’s witnesses pursuant to CPL 160.50, because the defense had made no showing that any information contained in the records would have demonstrated the witnesses’ bias in favor of the victim or hostility to the defendant. The First Department ruled in a similar fashion, in 2006, citing *902 Acevedo (supra), in People v Padilla (28 AD3d 365 [2006], lv denied 7 NY3d 792 [2006]).
In Matter of Joseph M., the Court of Appeals declined to find an “inherent power” to unseal records sealed pursuant to CPL 160.50. A unanimous Court reasoned: “If there is to be an exception to the general rule proscribing the release of sealed records — upon a showing of ‘extraordinary circumstances’ of the type alleged here [teacher disciplinary proceedings] — it should be created by the Legislature, not by the courts” (at 134 [citation omitted]).
Unfortunately, nearly 20 years later, the statute remains unchanged.[3]
In light of all of the above, three factors dictate this court’s decision. First, pursuant to CPL 640.10, Ms. Stanley has made a valid request for documents that is entitled to full faith and credit. As noted by our Court of Appeals in Codey (at 525-526):
“The Uniform Act to Secure the Attendance of Witnesses From Without a State (Uniform Act) is a reciprocal statute that has been adopted in all 50 States, as well as in Puerto Rico, the Virgin Islands and the District of Columbia. The Uniform Act provides detailed and constitutionally valid procedures whereby a party to a criminal proceeding in one State can either obtain the presence of a witness residing in another State or can compel the production of evidence located in another State (see, New York v O’Neill, 359 US 1).”
Significantly, the Court of Appeals in Codey cited policy considerations, including the interests of comity and respect for a sister state’s investigative processes, in preventing New York courts from even considering whether evidence sought under CPL 640.10 (2) was admissible or subject to some privilege. Second, no state procedural rule may operate to deprive a defendant of her constitutional right to due process — to offer evidence in her defense. (Chambers v Mississippi, 410 US 284 [1973].) Third, this court finds that under the circumstances of this case, there is absolutely no interest protected by CPL 160.50 that would be implicated by unsealing the court records of a deceased person. Accordingly, this court, acting in the interest of justice, will examine in camera all the available dockets *903 requested by Judge Amero and, after redacting any material that might implicate any other person’s CPL 160.50 rights, will unseal said dockets and furnish certified copies of same to Ms. Stanley’s defense counsel.

. CPL 160.50 (1) states:
“(d) such records shall be made available to the person accused or to such person’s designated agent, and shall be made available to (i) a prosecutor in any proceeding in which the accused has moved for an order pursuant to section 170.56 or 210.46 of this chapter, or (ii) a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires that such records be made available to it, or (iii) any state or local officer or agency with responsibility for the issuance of licenses to possess guns, when the accused has made application for such a license, or (iv) the New York State division of parole when the accused is on parole supervision as a result of conditional release or a parole release granted by the New York state board of parole, and the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision or (v) any prospective employer of a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of this chapter, in relation to an application for employment as a police officer or peace officer; provided, however, that every person who is an applicant for the position of police officer or *900 peace officer shall be furnished with a copy of all records obtained under this paragraph and afforded an opportunity to make an explanation thereto, or (vi) the probation department responsible for supervision of the accused when the arrest which is the subject of the inquiry is one which occurred while the accused was under such supervision.”

. For a discussion of legislation proposed in 2009 amending CPL 160.50 to give the court an interest of justice authority to unseal records, see People v Marcus A. (28 Misc 3d 667, 675 [Sup Ct, NY County 2010, Merchan, J.]).