OPINION OF THE COURT
Fuchsberg, J.
The issue before us is whether an order which directs the sealing of official records and papers pertaining to a criminal trial in which an attorney has been acquitted, operates to prevent those records from being unsealed for use in a subsequent investigation into the attorney’s fitness to practice law. The Appellate Division reversed and denied the motion for unsealing as a matter of law. We now affirm.[1]
Respondent, a lawyer, was indicted for the misdemeanor of criminal solicitation in the second degree. The charge was based on the allegation that he had counseled a client to deny before a Grand Jury that he had paid $5,000 in cash to expedite approval of his nursing home establishment. After the verdict of acquittal, the attorney promptly and successfully moved under CPL 160.50 for an order sealing the official records of the prosecution.
Two months later, however, the Special Prosecutor, acting at the request of the Committee on Grievances of the Association of the Bar of the City of New York, moved the court to order that the records and papers be unsealed to assist the committee in determining whether to bring professional disciplinary charges. The trial court granted the prosecutor’s motion "in the interests of justice”. In reversing, the Appellate Division concluded that CPL 160.50 (subd 1) did not authorize any exception to the sealing requirement in this situation. It also held that two tape recordings introduced into evidence at the criminal trial were not within the definition of *662 "official records and papers” protected by the sealing statute (CPL 160.50, subd 1, par [c]).[2]
In pertinent part, CPL 160.50 reads:
"1. Upon the termination of a criminal action or proceeding against a person in favor of such person * * * unless the district attorney upon motion with not less than five days notice to such person or his attorney demonstrates to the satisfaction of the court that the interests of justice require otherwise, or the court on its own motion with not less than five days notice to such person or his attorney determines that the interests of justice require otherwise and states the reasons for such determination on the record, the court wherein such criminal action or proceeding was terminated shall enter an order, which shall immediately be served by the clerk of the court upon the commissioner of the division of criminal justice services and upon the heads of all police departments and other law enforcement agencies having copies thereof, directing that:
•1* *$• H»
"(c) all official records and papers, including judgments and orders of a court * * * relating to the arrest or prosecution * * * on file with the division of criminal justice services, any court, police agency, or prosecutor’s office be sealed and not made available to any person or public or private agency”.
The statute serves the laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation. That detriment to one’s reputation and employment prospects often flows from merely having been subjected to criminal process has long been recognized as a serious and unfortunate by-product of even unsuccessful criminal prosecutions (see Menard v Mitchell, 430 F2d 486, 490 [Bazelon, Ch. J.]; see, also, Schwartz & Skolnik, Two Studies of Legal Stigma, 10 Social Prob 133 [1962]; Hess & Le Poole, Abuse of the Record of Arrest Not Leading to Conviction, 13 Crime & Delinquency 494 [1967]). The statute’s design is to lessen such consequences (see Governor’s Approval Mem *663 orandum, NY Legis Ann, 1976, p 408; see, generally, Gough, Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status, 1966 Wash U LQ 147, 156, 157-162).
The broad thrust of the sealing requirement is further evidenced by CPL 160.60, which states in no uncertain terms that "[t]he arrest or [unsuccessful] prosecution shall not operate as a disqualification óf any person so accused to pursue or engage in any lawful activity, occupation, profession, or calling”.[3] Consistent with the statute’s remedial purpose, is its intended application to any criminal action or proceeding terminated in favor of the person accused. The broad definition thus encompasses an expansive class of dispositions, including acquittal and various specified dismissals and vacaturs, regardless of whether premised on grounds unrelated to guilt or innocence (see CPL 160.50, subd 2).
CPL 160.50 furthermore establishes the methods by which such records may remain unsealed (subd 1). And, once a sealing order has issued there are but few narrowly defined exceptions to its terms; to wit, the records remain available (1) to a prosecutor in any proceeding in which the accused has moved for an order for an adjournment in contemplation of dismissal in a case involving marihuana, (2) to a law enforcement agency if justice requires that such records be made available to it, or (3) to any agency having responsibility for the issuance of gun licenses (CPL 160.50, subd 1, par [d]). None of these, obviously, can justify making the records available to the Grievance Committee. Although it has been suggested that these exceptions may prove too narrow (see Bellacosa, Practice Commentary, McKinney’s Cons Laws of NY, Book 11 A, CPL 160.50 [Cum Supp, 1978-1979], p 288; cf. State Educ Dept Memo Recommending Disapproval of S 9924-A [CPL 160.50], June 21, 1976), the Legislature did not expand the scope of the exclusions from a sealing order when it amended the statute in 1977 (L 1977, ch 835, §§ 1, 2; L 1977, ch 905, § 1).
*664 Though the statute, therefore, embodies stringent safeguards by which court records may remain confidential, in appropriate cases courts have called upon a power, traditionally labeled inherent, to provide similar relief when the interests of justice so dictate. The power grows out of that measure of discretionary authority courts enjoy with respect to their own records insofar as they pertain to the business of the court and when essential to the proper administration of justice (see Matter of Werfel v Fitzgerald, 23 AD2d 306, 311; see, also, Restricting Public Access to Judicial Records of State Courts, Ann., 84 ALR3d 598).
Exercised only rarely, this power has variously been wielded to amend and conform court records to the truth (People ex rel. Hirschberg v Orange County Ct., 271 NY 151, 156-157; Bohlen v Metropolitan El. Ry. Co., 121 NY 546, 550-551), or to seal court records in order to preserve confidentiality in sensitive proceedings (see Matter of Richard S. v City of New York, 32 NY2d 592, 595-596 [Family Court may exercise inherent power to seal its records when adjudication of juvenile as "person in need of supervision” was reversed]; Danziger v Hearst Corp., 304 NY 244, 248-249; Stevenson v News Syndicate Co., 276 App Div 614, 618, affd 302 NY 81 [court has inherent power to promulgate rule sealing records in matrimonial actions]), or to expunge records relating to a prosecution from which no conviction resulted (see Matter of Henry v Looney, 65 Misc 2d 759, 762-763 [Wachtler, J.] [juvenile’s surname expunged from arrest records, court records sealed]). In all these cases, resort to sealing or expungement, even absent any statutory authorization, was found warranted to protect those who might unjustly be injured by the indiscriminate availability of records.
It is suggested that, by like logic, in the even rarer and more extraordinary circumstances in which sealed records must be unsealed in order to serve fairness and justice, courts are not impotent to do so as well. On that premise, appellant argues that the special responsibility of courts in dealing with matters relating to discipline of members of the Bar furnishes a sufficiently compelling impetus for the courts to plumb their inherent power to make sealed records available (cf. Matter of Anonymous Attorneys, 41 NY2d 506, 511).
But, indeed, while cases might arise in which the exercise of a power to unseal would be appropriate (cf. Johnson v State, 336 So 2d 93, 95 [Fla]), the proceeding before us does not *665 present such a situation. We need go no further than to say that in the light of the availability of the tapes of conversations between the respondent and the operator of the nursing home, a key to the criminal prosecution itself, the Appellate Division did not err in finding that Criminal Term had abused its discretion by disregarding the clear and unequivocal words of the statute.
Accordingly, the order of the Appellate Division should be affirmed.

. The parties have not briefed the question of whether the appeal is properly before us. If the appeal is being taken from an order entered in a "criminal proceeding”, we would be required to dismiss inasmuch as there is apparently no statutory authority for such an appeal (see CPL 1.20, subd 18; 450.10, 450.15; Matter of Santangello v People, 38 NY2d 536; Matter of Alphonso C. [Morgenthau], 38 NY2d 923). On the other hand, if the appeal is being taken from an independent order entered in a civil proceeding, an appeal would lie to this court under CPLR 5601 (subd a) by virtue of the reversal at the Appellate Division. We hold the matter to be civil, for although it relates to a criminal matter, it does not affect the criminal judgment itself, but only a collateral aspect of it — namely, the sealing of the court record (see People v Public Serv. Mut. Ins. Co., 37 NY2d 606, 610-611).

. Respondent’s appeal, purportedly taken as a matter of right from so much of the decision as held that the tapes were not within the embrace of CPL 160.50, was dismissed on the ground that he was neither a party aggrieved (CPLR 5511) nor able to appeal from an asserted error in the opinion rather than the order of the court (Cohen and Karger, Powers of the New York Court of Appeals, § 91, pp 394-395). He did not move for leave to appeal.

. The comprehensiveness of the statutory scheme is also manifested by subdivision 14 of section 296 of the Executive Law, adopted in conjunction with CPL 160.50, which makes it an unlawful discriminatory practice for "any person, agency, bureau, corporation or association * * * to make any inquiry about * * * or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual * * * [which was terminated in his favor] in connection with the licensing, employment or providing of credit or insurance to such individual” (see Matter of Skyline Inn Corp. v New York State Liq. Auth., 44 NY2d 695).