*130
 
 OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 The general rule established by CPL 160.50 is that — unless the court determines that the interests of justice require otherwise — the record of a criminal action or proceeding upon termination in favor of the accused "shall be sealed and not made available to any person or public or private agency” (subd [1] [c]). The statute specifies that the sealed records shall be made available upon request to the accused and to six enumerated categories of persons or public or private agencies
 
 (see,
 
 subd [1] [d]). The question presented in this appeal is whether a Board of Education, a public agency not listed in CPL 160.50 (1) (d), is entitled to obtain such sealed records for use in a hearing under Education Law § 3020-a on charges brought against a tenured teacher.
 

 For reasons to be explained, we conclude that a Board of Education may not have access to sealed records for such purpose. It follows that in this case there was no legal basis for directing the unsealing of records pertaining to the unsuccessful prosecution of respondent for a misdemeanor charge of drug possession. There should, accordingly, be a reversal.
 

 I
 

 Respondent, a tenured music teacher, was arrested on May 12, 1990 on charges of misdemeanor possession of a controlled substance (Penal Law § 220.03). On April 15, 1991, a jury acquitted him of the charge. As required by CPL 160.50, the Trial Judge sealed the records pertaining to the arrest and prosecution. On May 29, 1991, the petitioner Board of Education commenced disciplinary proceedings against respondent pursuant to Education Law § 2590-j (7) (b) and § 3020-a, charging him with the same misconduct as alleged in the unsuccessful criminal prosecution.
 

 The Board brought the instant application on January 21, 1992 in Supreme Court for an order unsealing the criminal court records as well as releasing the prosecutor’s file and the physical evidence. Supreme Court granted the Board’s application, concluding that despite the lack of specific statutory power it had inherent discretionary power to unseal records "in extraordinary circumstances in the interests of fairness and justice”, citing
 
 Matter of Dondi
 
 (63 NY2d 331, 338) and
 
 Matter of Hynes v Karassik
 
 (47 NY2d 659, 664-665). The court held that the Board had "demonstrated a compelling need to
 
 *131
 
 unseal the records because it cannot obtain the information elsewhere and it needs the records to conduct the disciplinary proceeding”. The Appellate Division affirmed unanimously on the authority of
 
 Matter of Dondi,
 
 noting that " 'without an unsealing of criminal records, the ends of protecting the public through investigation and possible discipline * * * cannot be accomplished.’ ” (188 AD2d 319.) We granted leave to appeal.
 

 II
 

 CPL 160.50 was enacted in 1976 in the same reform legislation that added a provision to the Human Rights Law (now Executive Law § 296 [16]) making it an unlawful discriminatory practice for an employer, in connection with the employment of an individual, to inquire about or act adversely on any prior criminal accusation which had terminated in the employee’s favor.
 
 *
 
 The purpose in adding these provisions to the Criminal Procedure Law and the Human Rights Law was to ensure that the protections provided to exonerated accuseds be "consistent with the presumption of innocence, which simply means that no individual should suffer adverse consequences merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law” (Governor’s Approval Mem, 1976 McKinney’s Session Laws of NY, at 2451). As we noted in
 
 People v Patterson
 
 (78 NY2d 711):
 

 "Indeed, the over-all scheme of the enactments demonstrates that the legislative objective was to remove any 'stigma’ flowing from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection (i.e., the presumption of innocence) to such accused in the pursuit of employment, education, professional li
 
 *132
 
 censing and insurance opportunities
 
 (see, People v Anderson,
 
 97 Misc 2d 408 * * *)”
 
 (id.,
 
 at 716).
 

 To effectuate this purpose, CPL 160.50 employs language that is mandatory. Upon termination of a criminal action in favor of an accused, the section provides that the record of such action
 
 "shall
 
 be sealed” (160.50 [1]); that all photographs, palmprints and fingerprints
 
 "shall
 
 forthwith be returned to such person” (160.50 [1] [a]); that any agency which may have transmitted copies of such photographs, palmprints, or fingerprints to an agency of another jurisdiction
 
 "shall
 
 forthwith formally request [their return]” (160.50 [1] [b]); and that all official records and papers relating to the arrest or prosecution "on file with the division of criminal justice services, any court, police agency, or prosecutor’s office
 
 shall be sealed and not made available to any person or public or private agency ”
 
 (160.50 [1] [c] [emphasis added]).
 

 After a sealing order issues, CPL 160.50 (1) (d) specifies a few instances when the sealed records may be released to specified categories of persons or agencies, viz., to a prosecutor in a criminal proceeding involving marihuana in which the accused has moved for adjournment in contemplation of dismissal (cl [i]); to a law enforcement agency on a showing that justice requires such release (cl [ii]); to an agency acting on an application made by the accused for a gun license (cl [iii]); to the New York State Division of Parole, under certain conditions, when the accused is on parole (cl [iv]); to a prospective employer in connection with an employment application of an accused for a position as a police officer or peace officer (cl [v]); and to the probation department responsible for supervision of the accused when the arrest subject to the inquiry occurred while the accused was under such supervision (cl [vi]).
 

 These exceptions in CPL 160.50 (1) (d) have been characterized as "narrowly defined”
 
 (Matter of Hynes v Karassik,
 
 47 NY2d 659, 663,
 
 supra).
 
 Indeed, in
 
 Karassik,
 
 we construed the statute strictly and held that none of the exceptions could justify making sealed records available to assist a grievance committee in determining whether to bring professional disciplinary charges against a lawyer
 
 (id.,
 
 at 663;
 
 see, Patterson, supra,
 
 at 714 [finding "no authorization in (CPL 160.50) for the use in a law enforcement agency’s investigatory procedures of a photograph retained in violation thereof’];
 
 Dondi, supra,
 
 at 338 [restating rule in
 
 Karassik
 
 that a grievance committee "has no standing under CPL 160.50 to seek an
 
 *133
 
 order to obtain records sealed pursuant to that provision as it does not constitute a Taw enforcement agency’ ”]; see
 
 also, Matter of Skyline Inn Corp.,
 
 44 NY2d 695, 696,
 
 supra
 
 [refusing to make exception to the Human Rights Law provision (now Executive Law § 296 [15]) to permit State Liquor Authority to consider dismissed criminal charge against licensee seeking a renewal]; and
 
 supra,
 
 note).
 

 Despite the statute’s mandatory language, its evident intent to limit the exceptions to persons or groups having some association with law enforcement problems, and the legislative recognition of the importance of protecting individuals from having dismissed criminal charges considered in connection with their employment, the Board would have us construe the statute as including an exception for teacher disciplinary proceedings. This we decline to do. Suffice it to say that if the Legislature had intended to create such an exception — one which, unlike the other exceptions, would have no law enforcement association — it would have done so
 
 (see generally,
 
 McKinney’s Cons Laws of NY, Book 1, Statutes § 240 ["Expression of one thing as excluding others”]). Moreover, such a holding would be contrary to our decisions
 
 (see, Patterson, supra,
 
 at 714;
 
 Dondi, supra,
 
 at 338;
 
 Karassik, supra,
 
 at 663).
 

 The Board argues alternatively that the unsealing order should be sustained, not as a proper exercise of power conferred by the statute, but as an exercise of "an inherent power to unseal records when justice demands,
 
 whether or not there is specific statutory authority”
 
 (emphasis added). The Board relies on our suggestion in
 
 Karassik (supra,
 
 at 664-665), later endorsed in
 
 Dondi,
 
 "that in 'extraordinary circumstances’ the Appellate Division may exercise its discretion, pursuant to inherent authority over records and its oversight and disciplinary power over attorneys and counselors at law, to permit the unsealing of criminal records”
 
 (Dondi, supra,
 
 at 338).
 

 But
 
 Dondi
 
 and
 
 Karassik
 
 do not support the Board’s argument. In
 
 Dondi,
 
 we based our conclusion that the Appellate Division had inherent power to obtain sealed records pertaining to attorneys on Judiciary Law § 90 (2). This section specifically vests the Appellate Division with the responsibility for overseeing and disciplining attorneys. But the Appellate Division has been granted no comparable power as to teachers who are subject to disciplinary hearings not by the court system but by the Boards of Education under the Education Law
 
 (see, e.g.,
 
 Education Law §§ 2590-j, 3020-a). Absent such a
 
 *134
 
 specific grant of power, a holding that the court has inherent authority to order the unsealing of records for use in a teacher disciplinary proceeding would frustrate a primary purpose of the 1976 amendments to the Criminal Procedure Law and the Human Rights Law (L 1976, ch 877) — protecting exonerated individuals from the unwarranted stigma that their employers or others could attach to dismissed criminal charges
 
 (see, Patterson, supra,
 
 at 714;
 
 Matter of Skyline Inn, supra,
 
 at 696;
 
 supra,
 
 note).
 

 Moreover, finding such an "inherent power” basis for an unsealing order here would subvert the plain intendment of the statutory scheme — to establish, in unequivocal mandatory language, a
 
 general proscription
 
 against releasing sealed records and materials, subject only to a few narrow exceptions. If there is to be an exception to the general rule proscribing the release of sealed records — upon a showing of "extraordinary circumstances”
 
 (Dondi, supra,
 
 at 338) of the type alleged here — it should be created by the Legislature, not by the courts.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the application to unseal denied.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order reversed, etc.
 

 *
 

 L 1976, ch 877; the amendment to the Human Rights Law was adopted as subdivision (14) of section 296 of the Executive Law and renumbered as subdivision (16) (L 1980, ch 689). In pertinent part it provides that it shall be an unlawful discriminatory practice for "any person, agency, bureau, corporation or association * * * to make any inquiry about * * * or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual * * * [which was terminated in his favor] in connection with the licensing, employment or providing of credit or insurance to such individual”
 
 (see, Matter of Skyline Inn Corp. v New York State Liq. Auth.,
 
 44 NY2d 695, 696 [holding that it was unlawful for the State Liquor Authority to consider a dismissed criminal charge against licensee in disapproving liquor license renewal applications]).