[16 NE3d 1156, 992 NYS2d 678]

In the Matter of New York State Commission on Judicial Conduct, Respondent, v Seth Rubenstein, Appellant. (And Another Action.)

Argued April 30, 2014; decided June 10, 2014

**POINTS OF COUNSEL**

*Greenfield Stein & Senior, LLP,* New York City (*Gary B. Freidman* and *Jeffery H. Sheetz* of counsel), for appellant. I. The New York State Commission on Judicial Conduct's completion of its investigation and disciplinary proceeding against Judge Doe did not render Seth Rubenstein's appeal moot, and even if it did, the Appellate Division should have decided Mr. Rubenstein's appeal because the issue whether CPL 160.50 bars disclosure to the State Commission of an acquitted defendant's sealed criminal records is novel and substantial, likely to recur and to continue to evade review. (*Matter of Bickwid v Deutsch,* 87 NY2d 862; *Matter of Williams v Cornelius,* 76 NY2d 542;

*Matter of Dondi*, 63 NY2d 331; *Matter of Westchester Rockland Newspapers v Leggett*, 48 NY2d 430; *Matter of M.B.*, 6 NY3d 437; *Coleman v Daines*, 19 NY3d 1087; *Green v Montgomery*, 95 NY2d 693; *Matter of Joseph M. [New York City Bd. of Educ.]*, 82 NY2d 128; *Matter of Katherine B. v Cataldo*, 5 NY3d 196; *Matter of Hynes v Karassik*, 47 NY2d 659.) II. This Court should reverse the Appellate Division's dismissal of Seth Rubenstein's appeal and Justice Fisher's May 25, 2012 order, because Justice Fisher's release of Mr. Rubenstein's criminal records violates CPL 160.50, in conflict with this Court's prior decisions. (*Matter of Katherine B. v Cataldo*, 5 NY3d 196; *Matter of Joseph M. [New York City Bd. of Educ.]*, 82 NY2d 128; *Matter of Dondi*, 63 NY2d 331; *Matter of Hynes v Karassik*, 47 NY2d 659; *Matter of City of Elmira v Doe*, 39 AD3d 942, 11 NY3d 799; *People v Marcus A.*, 28 Misc 3d 667; *East Meadow Community Concerts Assn. v Board of Educ. of Union Free School Dist No. 3*, 18 NY2d 129.)

*Eric T. Schneiderman, Attorney General*, New York City (*Won S. Shin, Barbara D. Underwood* and *Steven C. Wu* of counsel), for respondent. I. The appeal should be dismissed as academic. (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707; *Lillbask ex rel. Mauclaire v State of Conn. Dept. of Educ.*, 397 F3d 77; *Seven Words LLC v Network Solutions*, 260 F3d 1089; *Matter of Morrison v New York State Div. of Hous. & Community Renewal*, 93 NY2d 834; *Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727.) II. The New York State Commission on Judicial Conduct is entitled to obtain relevant sealed records when investigating judicial misconduct. (*Matter of Stern v Morgenthau*, 62 NY2d 331; *Matter of Mogil*, 88 NY2d 749; *Matter of Duckman*, 92 NY2d 141; *Matter of Margaret Ann E. v Huban F.*, 54 NY2d 814; *Matter of New York City Health & Hosps. Corp. v New York State Commn. of Correction*, 19 NY3d 239; *Matter of Harper v Angiolillo*, 89 NY2d 761; *Matter of Dondi*, 63 NY2d 331; *Matter of Joseph M. [New York City Bd. of Educ.]*, 82 NY2d 128; *Matter of Nicholson v State Commn. on Jud. Conduct*, 50 NY2d 597; *Matter of Hart [State Commn. on Jud. Conduct]*, 7 NY3d 1.)

**OPINION OF THE COURT**

RIVERA, J.

In this appeal, we conclude that the New York State Commission on Judicial Conduct is authorized, pursuant to the Judiciary Law and its constitutional mandate to investigate judicial

misconduct, to request and receive records sealed under Criminal Procedure Law § 160.50 for use in its investigations. We further hold that the Appellate Division erred by dismissing as moot appellant's challenge to the Commission's authority. We therefore reverse the Appellate Division order dismissing the appeal as moot, and deny appellant's application to vacate the ex parte order releasing his sealed records.

## I

Appellant Seth Rubenstein appeals from an order of the Appellate Division, dismissing as moot his challenge to the release of sealed criminal records to respondent New York State Commission on Judicial Conduct (Commission). Supreme Court had granted the Commission access to records of a criminal proceeding terminated in favor of appellant for use in the Commission's investigation into possible judicial misconduct by Judge Doe, not a party here, and appellant's codefendant in the underlying criminal proceeding. The investigation led to the Commission's July 2011 formal written complaint against Judge Doe charging misconduct arising from her judicial election campaign, and her censure in 2012.

Appellant is a lawyer who was criminally prosecuted along with Judge Doe on charges of violations of the Campaign Finance Law in relation to contributions he made to the Judge's campaign, and advice he allegedly provided regarding those contributions. Eight of the 10 criminal charges brought against Judge Doe and appellant were dismissed on jurisdictional grounds, and a jury acquitted them of the remaining charges. In accordance with CPL 160.50, the records of the criminal proceeding were sealed following termination of the proceedings in favor of the defendants.

Approximately one month after the acquittal, the Commission initiated an investigation into Judge Doe for possible misconduct related to her campaign. In furtherance of its investigation, the Commission moved ex parte in Supreme Court for an order releasing for its review the sealed records from the underlying criminal proceeding, "for use in proceedings conducted pursuant to Article 6, Section 22, of the Constitution, and Article 2-A of the Judiciary Law."[1] In his supporting affir-

---

1. The Commission requested "the official records and papers including any and all transcripts of the proceedings and exhibits and other related case

mation, the Commission Administrator asserted that "New York courts have regularly ordered that sealed materials in criminal cases be provided to the Commission," and cited a number of examples of lower court cases. In May 2010, Supreme Court granted the motion and ordered release of the records pursuant to Judiciary Law § 42 (3) and CPL 160.50, and further granted the Commission's request to seal the order and all supporting papers.

Thereafter, in January 2011, the Commission deposed the appellant in connection with its investigation of Judge Doe. At the deposition, appellant's counsel inquired whether any questions to be asked of his client directly, or regarding any documents, originated from information contained in the sealed criminal records. Counsel for the Commission responded that the Commission had received materials through an appropriate court order, and that his questions were "in part possibly" derived from those court records. Appellant's counsel then objected to the release of the records from the underlying criminal proceeding on the ground that it violated CPL 160.50. Nevertheless, he instructed appellant to answer the Commission's questions rather than be held in contempt. According to appellant, the Commission refused requests to provide him with a copy of the court's ex parte release order.

## II

In March 2012, the Commission issued a subpoena for a second deposition of appellant.[2] In response, appellant filed an order to show cause to vacate the ex parte May 2010 order releasing the sealed records to the Commission, prohibit the Commission's use of any documents or information obtained pursuant to that release order, and order the Commission to return all documents and copies "to the files from which they were obtained." Appellant argued that CPL 160.50 prohibited the Commission's access to the sealed records because the Commission did not fall within one of the six statutory exceptions to the sealing provision, specifically the "law enforcement agency" exception under CPL 160.50 (1) (d) (ii). The Commission opposed the motion, arguing it had inherent constitutional responsibility to oversee the discipline of judges and authority under Judiciary Law § 42 (3) to access the sealed documents.

documents and/or materials of this sealed case, pursuant to allegations that judicial misconduct was committed in connection with [the criminal] case."

2. The hearing for which the Commission subpoenaed appellant was later adjourned without date.

Supreme Court ostensibly denied appellant's application to vacate the release order as procedurally defective.[3] However, the court also rejected the claim that it was without authority to disclose to the Commission its own records and papers, and cited to our decision in *Matter of Dondi* (63 NY2d 331 [1984]), which recognized the Appellate Division's "inherent powers" to obtain sealed records of criminal proceedings in furtherance of its attorney discipline function. Finding that the public interest in the integrity of the judiciary was as compelling as the interest involved in *Matter of Dondi*, the court stated that "[t]he Commission's authority and the preservation of the integrity of the state's judiciary may not be stymied by the statutory constraints of CPL 160.50; to conclude otherwise would dangerously undermine the ability of the Commission to meet its constitutional mandate." Appellant appealed.[4]

During the pendency of the appeal Judge Doe agreed to a censure. In accordance with Judiciary Law § 44 (5),[5] she entered an agreed statement of facts, stipulating that the Commission make its determination based upon the facts contained therein, recommending she be censured, and waiving further submissions or oral argument. The Commission drafted the agreed statement of facts with input from Judge Doe, who provided a detailed overview of the circumstances giving rise to the underlying criminal proceeding. The agreed statement of facts identified appellant by name and discussed Judge Doe's apparent reliance on his advice and financial payments during her election campaign. In October 2012, the Commission issued its written determination recommending a censure and posted that determination, the agreed statement of facts, the pleadings, and three related letters on its public government website.

---

3. Supreme Court concluded appellant lacked standing to object to the Commission's use of the records, an order to show cause was an irregular and procedurally improper mechanism by which to challenge an administrative order concerning a criminal matter, and appellant failed to demonstrate a basis for vacatur of a prior order under CPLR 5015.

4. Appellant also sought a preliminary injunction prohibiting the Commission from using the challenged records pending determination of his appeal, as well as a temporary restraining order barring the Commission from using the records pending decision on his preliminary injunction motion. The Appellate Division denied both requests.

5. Judiciary Law § 44 (5) provides that, "[s]ubject to the approval of the [C]ommission, the administrator and the judge may agree on a statement of facts and may stipulate in writing that the hearing shall be waived." Where this occurs, "the [C]ommission shall make its determination upon the pleadings and the agreed statement of facts."

Thereafter, the Commission moved before the Appellate Division to dismiss appellant's application to vacate the ex parte release order. The Commission argued that further proceedings would be purely academic because it no longer needed the records given Judge Doe's consent to the censure. Appellant opposed the motion on the grounds that the issue was not moot, and, even if it were, that the matter fell within the exception to the mootness doctrine.

The Appellate Division dismissed the appeal as moot, but directed the Commission to return to the originating court all of the previously sealed documents and ordered that the records be resealed for all purposes (see 103 AD3d 409 [1st Dept 2013]). The Commission has apparently complied with the Appellate Division order to return the records. We granted appellant leave to appeal (21 NY3d 855 [2013]).[6]

### III

An appeal is moot "unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment" (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 713-714 [1980]). Where the case presents a live controversy and enduring consequences potentially flow from the order appealed from, the appeal is not moot (see Saratoga County Chamber of Commerce v Pataki, 100 NY2d 801, 810 [2003] ["The jurisdiction of this Court extends only to live controversies"]; Matter of Bickwid v Deutsch, 87 NY2d 862, 863 [1995] [holding an appeal from a civil contempt order for which the appellant had already served his sentence was not moot, "(i)nasmuch as enduring consequences potentially flow(ed)" from the order]; Matter of Williams v Cornelius, 76 NY2d 542, 546 [1990] [concluding that, "as lasting consequences potentially flow(ed)" from the appellant's criminal contempt adjudication, "the proceeding remain(ed) ripe for judicial review" regardless of the appellant's having already served his sentence]).

The Commission argues the appeal is moot because appellant will not be affected by resolution of the issue presented in this litigation. Given that its investigation is complete, it has no further use for the sealed records, and it has returned the documents

---

**6.** The Appellate Division order dismissing appellant's appeal from the Supreme Court order which denied his application to vacate the ex parte order releasing his sealed records was the first opportunity to challenge the release order and, thus, is a final appealable paper.

to the originating court, the Commission claims there is no live controversy left to resolve and, thus, any decision on the merits would be purely academic.

Appellant counters that this matter is not moot because the continued posting of the Commission's determination on its website, with its references to him and his alleged conduct, has "enduring consequences" for his credibility and reputation as a practicing lawyer. In particular, he notes that the Commission's determination revealed his indictment and "is replete with comments critical of [his] conduct." He argues that it is the lasting effects of the Commission's unlawful access to and use of the records, represented by the posting of private and discrediting information on its website, which renders this proceeding live.[7]

■ We agree that the Commission's identification of appellant in its publicly available documents, and its description of his involvement in Judge Doe's judicial election campaign, including assertions that his legal advice informed the Judge's actions, adversely impact his professional reputation and standing within the legal and greater communities, and constitute enduring consequences that flow from the use of the sealed records. It is impossible to see how it could be otherwise.

The publicly-posted Commission determination of censure specified that appellant was criminally indicted for felonies and misdemeanors arising from payments he made to Judge Doe during her campaign, and that the majority of the criminal charges were dismissed for jurisdictional reasons with the remainder dismissed pursuant to an acquittal. The Commission further characterized appellant as playing "an active role" in Judge Doe's campaign inasmuch as he "was actively involved in fundraising" for her and "was one of the signatories on the campaign's bank account." Additionally, the Commission set forth the amount of money appellant contributed and loaned to Judge Doe's campaign, and stated that he advised her on election financing issues. The Commission also wrote that certain

---

7. The parties disagree as to whether any of the Commission's statements can be traced to the sealed records given that the Commission's determination is based upon facts agreed to by Judge Doe, thus providing an independent source for the Commission's findings. Notwithstanding that the Commission's determination contains jointly agreed to facts, the investigatory value of the records is not in dispute. Indeed, the Commission admitted as much to appellant's counsel during appellant's deposition. Our determination that the matter on appeal is not moot is thus unaffected by Judge Doe's agreement to the facts that support the Commission's publicly announced censure determination.

financial conveyances by appellant for the benefit of Judge Doe's campaign, "were contrary to the generally accepted and understood interpretation of the Election Law." In addition to the election finance matters, the Commission referred to appellant's long-term professional relationship and friendship with Judge Doe, and suggested unethical conduct based on this relationship.

Given these statements, the potential for damage to appellant's professional reputation from the posting of the Commission's censure determination is obvious. Therefore, we conclude that the identification of appellant by name, and the detailed description of his involvement in Judge Doe's misconduct, has enduring consequences for appellant so long as the Commission's censure determination remains posted on its website. Thus, we reverse the Appellate Division order dismissing the appeal as moot.

## IV

Turning to the question of whether the Commission acted within its power when it obtained records of appellant's underlying criminal proceeding, we conclude that in order to fulfill its constitutional duties and obligations to investigate judicial misconduct, and in accordance with its broad investigatory powers under the Judiciary Law, the Commission is authorized to obtain criminal records sealed pursuant to CPL 160.50.[8] The Commission may receive sealed records provided they are reasonably related to a judicial misconduct inquiry. This authority extends to the sealed records of an individual other than the judge under investigation. Therefore, the Commission acted within the scope of its authority in obtaining and using appellant's sealed criminal records in its investigation of Judge Doe.

The Commission is an independent agency charged with "protect[ing] the integrity of the judiciary," "preserv[ing] and enhanc[ing] the public's confidence in its courts," and ensuring qualified judges serve as part of our judicial system (*Matter of Stern v Morgenthau*, 62 NY2d 331, 339 [1984]). It is constitutionally authorized to "receive, initiate, investigate and hear complaints" of judicial misconduct and has exclusive jurisdiction over such complaints (NY Const, art VI, § 22 [a]; *see* Judiciary

---

**8.** It is unnecessary to consider whether the Commission may publicly cite or publish records previously sealed pursuant to CPL 160.50 in connection with a related judicial misconduct determination.

Law § 42 [3]). Upon request by the affected judge, this Court has plenary power to review the legal and factual findings of the Commission as well as the sanction imposed (*see* NY Const, art VI, § 22 [d]; Judiciary Law § 44 [9]; *see also Matter of Gilpatric [State Commn. on Jud. Conduct]*, 13 NY3d 586, 589 [2009]; *Matter of Washington*, 100 NY2d 873, 876 n 2 [2003]). We have recognized that the Commission "must be free to conduct . . . investigation[s]" (*Matter of Nicholson v State Commn. on Jud. Conduct*, 50 NY2d 597, 608 [1980]), and that the effectiveness of its inquiries "necessarily requires the free flow of information to the Commission" (*Matter of Stern*, 62 NY2d at 339).

The Commission relies specifically on Judiciary Law § 42 (3) in support of its argument that it has authority to obtain sealed criminal records. Section 42 (3) provides that the Commission may "request and receive from any court, department, division, board, bureau, commission, or other agency of the state or political subdivision thereof or any public authority such assistance, information and data as will enable it properly to carry out its functions, powers and duties." By its plain terms, the Judiciary Law grants the Commission broad access to information in furtherance of its investigatory mandate.

Notwithstanding this broad access to a wide range of information from a diverse body of sources, appellant contends that the Commission is statutorily prohibited from obtaining criminal records sealed pursuant to CPL 160.50. He points to the Commission's absence from the express statutory exceptions to the sealing provision in support of his argument that the Commission cannot access his criminal records.

Section 160.50 (1) provides that, "[u]pon the termination of a criminal action or proceeding against a person in favor of such person, . . . the record of such action or proceeding shall be sealed." The sealing provision encompasses, among other things, all "official records and papers" (CPL 160.50 [1] [c]). We have recognized the salutary and protective goals of section 160.50, explaining that

> "the Legislature's objective in enacting CPL 160.50 and the related statutes . . . was to ensure that the protections provided be consistent with the presumption of innocence . . . . Indeed, the over-all scheme of the enactments demonstrates that the legislative objective was to remove any stigma flowing

from an accusation of criminal conduct terminated in favor of the accused, thereby affording protection . . . to such accused in the pursuit of employment, education, professional licensing and insurance opportunities" (*People v Patterson*, 78 NY2d 711, 716 [1991] [internal quotation marks and citations omitted]).

However, "a former defendant's interest in preventing the disclosure of official records and papers . . . is not absolute" (*Matter of Harper v Angiolillo*, 89 NY2d 761, 767 [1997]). Indeed, "the Legislature has acknowledged the existence of countervailing considerations to the sealing of such records and papers" as reflected in express statutory exceptions set forth in CPL 160.50 (1) (d) (*Matter of Harper*, 89 NY2d at 766-767 [internal quotation marks and citation omitted]).

In addition to the accused and the accused's designated agent, a court may make sealed records available only: to (1) a "prosecutor in any proceeding in which the accused" has moved for an adjournment in contemplation of dismissal in a case involving marijuana charges below felony grade (CPL 160.50 [1] [d] [i]); (2) "a law enforcement agency upon ex parte motion in any superior court, if such agency demonstrates to the satisfaction of the court that justice requires" release (CPL 160.50 [1] [d] [ii]); (3) state or local gun licensing agencies when the accused applies for a gun license (*see* CPL 160.50 [1] [d] [iii]); (4) the Division of Parole when the arrest occurred while the accused was under parole supervision (*see* CPL 160.50 [1] [d] [iv]); (5) the prospective employer of a police officer or peace officer, so long as the applicant is provided with a copy of all records and given an opportunity to explain (*see* CPL 160.50 [1] [d] [v]); and (6) any probation department responsible for the accused's supervision at the time of his or her arrest (*see* CPL 160.50 [1] [d] [vi]). None of these exceptions apply to the Commission.

Our inquiry does not commence and end with CPL 160.50, for we have recognized that there may be other sources of authority permitting access to sealed records. Thus, in *Matter of Dondi*, a case in which a grievance committee sought sealed records in connection to an attorney disciplinary proceeding, we noted the "extraordinary circumstances" arising from the Appellate Division's oversight and disciplinary power over attorneys (63 NY2d at 338). We further recognized Judiciary Law § 90 (2) as the basis for the Appellate Division's "inherent authority over records and its oversight and disciplinary power over attorneys

and counselors at law, to permit the unsealing of criminal records" (*Matter of Dondi*, 63 NY2d at 338, citing *Matter of Hynes v Karassik*, 47 NY2d 659, 664-665 [1979]).

However, we have been careful when considering whether to permit access to sealed records so that we do not undermine the legislative goals of CPL 160.50, and make unsealing of records the rule rather than a narrowly confined exception (*see Matter of Katherine B. v Cataldo*, 5 NY3d 196, 202-203 [2005]; *Matter of Joseph M. [New York City Bd. of Educ.]*, 82 NY2d 128 [1993]; *Patterson*, 78 NY2d at 714; *Matter of Dondi*, 63 NY2d at 338; *Matter of Hynes*, 47 NY2d at 663-665). In *Matter of Joseph M.*, we held that the Board of Education was not a "law enforcement agency" within the meaning of CPL 160.50 (1) (d) (ii) and, thus, could not obtain sealed records for use in a teacher disciplinary proceeding (82 NY2d at 133). "Absent such a specific grant of power," we concluded, "a holding that the court has inherent authority to order the unsealing of records . . . would frustrate a primary purpose of the 1976 amendments to the Criminal Procedure Law" (82 NY2d at 133-134 [describing that purpose as "protecting exonerated individuals from the unwarranted stigma . . . others could attach to dismissed criminal charges"]).

What *Matter of Dondi* and our other cases make clear is that absent "extraordinary circumstances" (63 NY2d at 338), a specific grant of power (*see Matter of Joseph M.*, 82 NY2d at 133-134), or the existence of a legal mandate the nature of which would be impossible to fulfill without unsealing criminal records (*see Matter of Dondi*, 63 NY2d at 338), sealed criminal records may only be accessed by individuals and agencies specifically enumerated, and "narrowly defined" in CPL 160.50 (1) (d) (*Matter of Hynes*, 47 NY2d at 663; *see Matter of Katherine B.*, 5 NY3d at 203-205; *Matter of Joseph M.*, 82 NY2d at 132-134).

Given the Commission's broad powers under the Judiciary Law, specifically its authority under Judiciary Law § 42 (3) to request and receive a wide range of records and data, and its constitutional duties and obligations to ensure the integrity of the judicial system by investigating and sanctioning judicial misconduct, we conclude that the Commission may obtain documents sealed pursuant to CPL 160.50. Continued public confidence in the judiciary is of singular importance, and can be furthered only by permitting the Commission access to information that allows it to quickly identify and respond to judicial misconduct, including criminal behavior, abuse of power,

corruption, and other actions in violation of laws applicable to judges. In short, ensuring the integrity of the judiciary is no less important than we found protecting the integrity of the bar to be in *Matter of Dondi* (63 NY2d at 338).

Allegations of judicial misconduct bring the integrity of the judicial system into direct question and undermine the public's faith in our judicial officers. It is the Commission's duty to preempt and mitigate these potential consequences by quickly and effectively investigating allegations of judicial misconduct. The Commission's responsibilities "transcend the criminal prosecution of individuals" because its "concern is institutional" (*Matter of Stern*, 62 NY2d at 339). Release of sealed records to the Commission serves the dual goals of facilitating the speedy sanction or removal of questionable jurists, while enabling the Commission to clear the names of judges whose conduct does not deserve reproach.

In upholding its authority to request and receive records sealed under CPL 160.50, we again emphasize the Commission's "overriding constitutional concern [in] protect[ing] the standards of the judicial system as a whole and [in] insur[ing] that none but qualified Judges remain a part of it" (*Matter of Stern*, 62 NY2d at 339). Accordingly, the order of the Appellate Division should be reversed, without costs, and appellant's application to vacate the order releasing his sealed records denied.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and ABDUS-SALAAM concur.

Order reversed, without costs, and appellant's application denied.