R.C. v City of New York (2024 NY Slip Op 03017)

R.C. v City of New York

2024 NY Slip Op 03017

Decided on June 04, 2024

Appellate Division, First Department

KERN, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 04, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Cynthia S. Kern
Ellen Gesmer Peter H. Moulton Tanya R. Kennedy John R. Higgitt

Index No. 153739/18 Appeal No. 1156 Case No. 2023-02267 

[*1]R.C., et al., Respondents,
v
The City of New York et al., Appellants.

Defendants appeal from the order of the Supreme Court, New York County (Lyle E. Frank, J.), entered on March 29, 2023, which, in connection with the preliminary injunction order issued September 27, 2021 directing the creation of a plan to cease defendants' violations of New York statutes concerning the sealing of arrest records and information, ordered the implementation of the plan setting forth various records-management directives and prohibitions regarding defendant New York Police Department's use of such records and information.

Sylvia O. Hinds-Radix, Corporation Counsel, New York (Lorenzo Di Silvio, Devin Slack and Richard Dearing of counsel), for appellants.
The Bronx Defenders, Bronx (Niji Jain and Anne Venhuizen), and Cleary Gottlieb Steen & Hamilton LLP, New York (Jonathan S. Kolodner, Michael Cinnamon, Guilherme Duraes and Jessica Metzger of counsel), for respondents.

KERN, J. 

Plaintiffs have brought this class action alleging that the New York City Police Department (NYPD) has been violating New York's statutes requiring the sealing of certain arrest information. Supreme Court issued a preliminary injunction prohibiting the NYPD's use of sealed arrest records and directing it to create a plan to cease its use of the records for investigatory purposes. Supreme Court ultimately rejected the plan created by the NYPD and instead issued a permanent injunction implementing a plan proposed by plaintiffs. The NYPD now brings this appeal challenging the plan adopted by Supreme Court. As we find that Supreme Court prematurely issued an overbroad permanent injunction, we reverse, vacate the permanent injunction order and remand for further proceedings consistent with this decision.
The New York sealing statutes at issue here, enacted in 1976, require that upon the favorable termination of a criminal proceeding or a noncriminal conviction, unless the government demonstrates to the satisfaction of the court that the interests of justice require otherwise, "arrest information," including photos, palm and fingerprints of arrestees, and official records and papers relating to an arrest or prosecution, will be "sealed and not made available" to any person or public or private agency, subject to six statutorily enumerated exceptions (Criminal Procedure Law §§ 160.50, 160.55 [Sealing Statutes]). The Legislature's objective in enacting the Sealing Statutes and their precisely drawn statutory exceptions was to ensure that " 'no individual should suffer adverse consequences [or stigma] merely on the basis of an accusation, unless the charges were ultimately sustained in a court of law'" (see People v Anonymous, 34 NY3d 631, 637 [2020], citing People v Patterson, 78 NY2d 711, 716 [1991], quoting Governor's Mem approving L 1976, Ch 877, 1976 McKinney's Sess Laws of NY at 2451).
After petitioners moved for a preliminary injunction, Supreme Court held that petitioners had established both a likelihood of success on the merits and irreparable harm[*2]. Accordingly, Supreme Court granted a preliminary injunction and issued an order directing the NYPD to submit to plaintiffs and the court a "plan to comply with this order as it relates to the cessation of use of sealed [arrest information] for investigatory purposes unless an unsealing order has been obtained. . .or an exception to the sealing statutes applies" (Preliminary Injunction Order). The court also provided plaintiffs an opportunity to submit comments on the NYPD's proposed plan.
In proposing a plan, the NYPD acknowledged the restrictions set forth by the Sealing Statutes. It advocated for a plan that would limit its ability to use sealed records for investigatory purposes but would allow continued use of the records for non-investigatory purposes such as overseeing conduct of officers, deriving aggregate data, and returning arrestees' property upon their release. Plaintiffs advocated for a more comprehensive plan that was not limited to remedying violations of the Sealing Statutes and that addressed any potential use of the sealed records. Among other things, they proposed the creation of "de-identified" sealed records, which would redact the identifying information of arrestees. They argued that these de-identified records would ensure that the NYPD would comply with the Sealing Statutes while also providing the NYPD with access to the records needed to address officer misconduct and to comply with local reporting requirements. Plaintiffs also proposed the creation of a permission list of NYPD personnel who would be granted access to sealed arrest records pursuant to the Sealing Statutes and also by "law, statute, regulation or ordinance."
Thereafter, Supreme Court issued an order implementing the Preliminary Injunction Order, which rejected the plan proposed by the NYPD and adopted the plan proposed by plaintiffs (Implementing Order). In addition to creating "de-identified" records and directing the creation of a permission list, the Implementing Order also directs NYPD to assess whether any documents, in addition to arrest records, should be treated as sealed under the order's "Guiding Principles." It also restricts the NYPD's access to arrest-related documents such as property invoices, domestic incident reports, and complaint reports.
We find that Supreme Court erred by prematurely issuing an overbroad permanent injunction without first making a final determination on the merits of the claim after a trial or summary judgment motion. Contrary to plaintiffs' argument, the Implementing Order is a permanent injunction rather than a preliminary injunction. The purpose of a preliminary injunction "is not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits" (Bass v WV Preserv. Partners, LLC 209 AD3d 480, 481 [1st Dept 2022] [internal quotation marks omitted]). Conversely, a permanent injunction is a type of final judgment that is issued on the merits of the [*3]claims asserted (see Weinreb v 37 Apts. Corp., 97 AD3d 54, 59 [1st Dept 2012]).
The Implementing Order contains no language suggesting that it is meant to be an interim measure while the court develops the record in advance of a motion for summary judgment or trial. On the contrary, the Implementing Order's language demonstrates that it is meant to be the permanent solution to NYPD's violations of the Sealing Statutes. Rather than maintaining the status quo, it contains over 50 paragraphs of directives that compel the NYPD to permanently change the way it manages its records. The Implementing Order contains final compliance timelines for the NYPD that do not contemplate any further relief being granted by the court. The Order also directs the NYPD to perform actions indefinitely into the future. For example, paragraphs 43 and 44 require the NYPD to conduct semi-annual audits and retain records access logs for a minimum of five years. However, neither of these auditing provisions contain a conclusion date, meaning that to comply with the court's order, the NYPD will have to audit its records management practices twice a year, indefinitely. Similarly, paragraph 46 of the Implementing Order requires the NYPD to submit proposals for training personnel in sealed records management within 180 days so that plaintiffs may review and provide comments. Then, paragraph 47 orders the NYPD to "administer any approved trainings to all current and future NYPD members" (emphasis added). The Implementing Order's final directives and imposition of indefinite obligations demonstrate that, despite plaintiffs' characterization, it is effectively a permanent injunction.
Generally, courts may not issue permanent injunctions before trial or a motion for summary judgment (see Bronx Islamic Socy., Inc. v Ally, 158 AD3d 581, 582 [1st Dept 2018], lv dismissed 32 NY3d 1070 [2018]; Barzilay v Lowenthal, 134 AD 502, 503 [1st Dept 1909]; Gray v City of New York, 19 Misc 3d 1117[A], 2008 NY Slip Op 50758[U], *2 [Sup Ct, NY County 2008], affd 58 AD3d 448 [1st Dept 2009]). Moreover, it is well established that courts may not issue an injunction that is preliminary in name but permanent in effect before a determination on the merits (see Oppenheim v Thanasoulis, 123 AD 494, 494 [1st Dept 1908]). While there is a limited exception to these rules when there are no further issues to be resolved and further proceedings would be wasteful, the exception does not apply where there are still numerous factual issues to be determined (see Bronx Islamic Socy., Inc.,158 AD3dat 582).
Contrary to plaintiffs' assertion, Supreme Court did not make sufficient factual findings to make a determination on the merits of the claim and there are still numerous factual issues to be resolved. A review of the record indicates that the proceedings before the court were limited to the parties exchanging drafts of the proposed plan and engaging in some off-the-record discussions with the court. The court [*4]did not make detailed factual findings about the scope and scale of the NYPD's violations of the Sealing Statutes that would have been necessary before it could impose such a far-reaching permanent injunction.
The Implementing Order's defects demonstrate the inadequacy of the fact-finding process undertaken by Supreme Court and the importance of the requirement that courts first rule on a motion for summary judgment or hold a trial before issuing a permanent injunction. For example, the court did not make any findings regarding the interplay between the six enumerated exceptions contained in the Sealing Statutes and the NYPD's use of sealed records to comply with its data aggregation and oversight requirements under other laws. Yet the court still attempted to harmonize these two conflicting sources of law by creating a permission list and de-identified records. The permission list in particular highlights the flaws that could have been remedied by a detailed fact-finding. Paragraph 4 of the Implementing Order directs the NYPD t0 create a permission list that would allow certain personnel to access sealed arrest records based on "law, statute, regulation, or ordinance." At the same time, paragraph 5 limits the NYPD's access to the sealed records to the six enumerated exceptions to the Sealing Statutes, which is in direct conflict with paragraph 4 and renders the permission list unworkable.
Plaintiffs' argument that the NYPD consented to the Implementing Order by participating in the extensive drafting process that led to its adoption is unavailing. Although the NYPD did not appeal the Preliminary Injunction Order, its participation in the drafting process that ultimately led to the rejection of its plan in its entirety and the adoption of plaintiffs' plan over its objection does not constitute its consent to the Implementing Order. Nonetheless, the Preliminary Injunction Order remains in full force and effect.
On remand, Supreme Court must first engage in fact-finding to develop a record that will enable it to make a determination on the merits of the claim. The court must make factual determinations to evaluate the NYPD's practices concerning sealed records and determine the full extent of the NYPD's violations of the Sealing Statutes. After the court has properly developed the record, the parties may move for summary judgment or proceed to trial. Only then may the court issue another permanent injunction.
Supreme Court also erred by issuing an overbroad permanent injunction that goes beyond the relief requested by plaintiffs. Injunctive relief must be narrowly tailored to address the specific unlawful activity giving rise to plaintiffs' injury (see Berkey Photo v Strome Film Distribs., 43 AD2d 914, 914 [1st Dept 1974]). Moreover, injunctive relief should be limited to the relief requested by the moving party (see Worrell v Lopez, 309 AD2d 928, 929 [2d Dept 2003]; NCR Corp. v Rotondi, 88 AD2d 537, 537 [1st Dept 1982]). Plaintiffs sought an [*5]order prohibiting the NYPD from providing its personnel with access to sealed arrest information for law enforcement purposes. Supreme Court was therefore limited to issuing an injunction that remedied the NYPD's violations of the Sealing Statutes, and it lacked the authority to order a plan that addresses what other purposes the sealed records can be used for, such as complying with local laws concerning the aggregation of data or accessing sealed records to address officer misconduct.
The Implementing Order, however, improperly addresses all possible uses for the sealed records. The Order's "Guiding Principles" section contemplates the use of sealed records in accordance with "other law or regulations" besides the exceptions contained in the Sealing Statutes, and paragraph 14 directs the NYPD to determine whether individual documents should be sealed according to these other laws and regulations. As noted above, paragraph 4 of the Implementing Order directs the NYPD t0 create a permission list, which would allow certain personnel to access sealed arrest records based on "law, statute, regulation, or ordinance" outside the Sealing Statutes. Moreover, paragraphs 8 through 10 of the Implementing Order direct the NYPD to create "de-identified" sealed records for oversight bodies to use in assessing officer conduct and to derive aggregate information that can be used to comply with local reporting requirements. The requirements that the NYPD create de-identified records and assess whether documents should be sealed according to laws other than the Sealing Statutes are overbroad and exceed the limited relief requested by plaintiffs, as they are attempts to address uses of the sealed records beyond the exceptions enumerated in the Sealing Statutes. On remand, after conducting the detailed fact-finding discussed above, the court should limit any potential relief to remedying violations of the Sealing Statutes by the NYPD, as requested by plaintiffs in their complaint.
Accordingly, the order of the Supreme Court, New York County (Lyle E. Frank, J.), entered on March 29, 2023, which, in connection with the preliminary injunction order issued September 27, 2021 directing the creation of a plan to cease defendants' violations of New York statutes concerning the sealing of arrest records and information, ordered the implementation of the plan setting forth various records-management directives and prohibitions regarding defendant New York Police Department's use of such records and information, should be reversed, on the law, the order vacated, and the matter remanded to Supreme Court for further proceedings consistent with this decision.
All concur except Moulton J., who dissents in part by separate Opinion.
MOULTON, J. dissenting in part I concur with the majority's decision to reverse Supreme Court, vacate the Implementing Order, and remand to the court on the ground that it prematurely issued a permanent injunction without first deciding [*6]the merits of plaintiffs' claims. Because of the way Supreme Court managed the case below, we remain in the dark concerning the extent of the NYPD's violations of the Sealing Statutes.
However, because we do not know the extent of the NYPD's violations, we cannot judge the appropriate scope of a remedy. For this reason, I respectfully disagree with the majority's decision to circumscribe the lower court's ability to craft a remedy on remand.
The majority prematurely finds that plaintiffs' efforts to address all possible uses of sealed records (for example, through de-identified records and a "permission list" of personnel allowed to access records) are improper attempts to address uses of sealed records "beyond the exceptions enumerated in the Sealing Statutes." The majority also finds that the relief embodied in the Implementing Order sweeps more broadly than the relief sought by plaintiffs in their complaint. While true, that is not an impediment to crafting relief that conforms to whatever facts are developed on remand (CPLR 3025[c]; see Do Kyung Lee v 33 Captain Claws, Inc. 221 AD3d 535, 536 [1st Dept 2023]).
While the record made below is limited, it demonstrates the NYPD's admitted violation of the Sealing Statutes. However, the scope of that violation is unclear. For example, the Implementing Order sets forth a nonexhaustive list of New York City Administrative Code sections, New York City Charter provisions, and other directives that require the NYPD to report a broad array of aggregate data concerning,among other relevant statistics, arrests. This paragraph states in full:
"10. Nothing in this order is intended to prevent use of or reporting on Aggregate Data, including compliance with statutorily mandated data reporting requirements that current[ly] exist or may be implemented in the future, such as the:
a) "Vallone Report" including, in relevant part: Overtime Statistics by Precinct, Police Service Area, Transit District and Specialty Units; Hazardous Violations and Arrests by Traffic Control District; Felony and Misdemeanor Arrests Statistics by Precinct, Police Service Area, Transit District, and Narcotics; Sex Crime Statistics by Offense Type and Precinct; Stop, Question, and Frisk Statistics by Precinct, Police Service Area, Transit District and Specialty Units; Firearm Arrests by most Serious Charge in Arrest by Precinct (Adm. Code § 140-150);
b) Annual Use of Force Report (Adm. Code § 14-150[b][1-8]);
c) MTA Crime Report, (Adm. Code § 14-150[D]);
d) School Safety Report (Adm. Code § 14-152);
e) Desk Appearance Ticket Report (Adm. Code § 14-156);
f) Criminal and Civil Summons Report (Adm. Code § 14-157);
g) Use of Force Incidents Report (Adm. Code § 14-158[B]);
h) Excessive Use of Force Incidents Report (Adm. Code § 14-158[c]);
i) Use of Force Basis for Encounter Report (Adm. Code § 14-159[B]);
j) Domestic Violence Report (Adm. Code § 14-161);
k) Hate Crime Report (Adm. Code § 14[*7]-161);
l) New York Division of Criminal Justice Services (DCJS) Report (UCR Program);
m) Top 35 Priority Area Social Service Planning Report (Adm. Code § 14-162);
n) Nuisance Abatement Report (Adm. Code § 14- 166);
o) Bail and Criminal Justice System Report (Adm. Code § 3-117);
p) Preliminary Mayor's Management Report and Mayor's Management Report (City Charter - Chapter 1 § 12);
q) Parking, Moving, Criminal and Civil Summonses Report (Adm. Code § 14-150);
r) Subway Fare Evasion Report (Adm. Code § 14-172);
s) Index Crime Clearing Rate Report (Adm. Code § 14-171); and Traffic Report (Adm. Code § 14- 153(A));
t) Making the documents available as articulated within N.Y. Crim. Proc. Law § 160.50(1)(d)."
In addition to these obligations to compile aggregate data, the NYPD has oversight responsibilities, both its own internal disciplinary procedures and in coordination with the Civilian Complaint Review Board (CCRB).
The record before us is opaque concerning how the NYPD historically has executed these reporting and oversight duties in relation to the Sealing Statutes. That opacity gives rise to questions: With respect to its reporting of aggregate data, how does the NYPD currently compile aggregate data for the reporting it must do? Does it compile this aggregate data in compliance with the Sealing Statutes? With respect to oversight functions, does the NYPD use sealed records for disciplinary purposes? Does it share sealed records with the CCRB? Does it conduct these oversight activities in compliance with the Sealing Statutes? We do not know the answers to any of these questions, because Supreme Court made no record on these questions.
I would remand to Supreme Court to conduct fact-finding on how the NYPD currently handles sealed records in all respects, including in its data reporting and oversight roles. The court should then issue a permanent injunction that attempts to harmonize the NYPD's duties under the Sealing Statutes with its duties under its various reporting and oversight requirements (see Matter of Langsam Prop. Servs. Corp. v McCarthy, 261 AD2d 208, 210 [1st Dept 1999] [under recognized principles of statutory construction, the Multiple Dwelling Law, the New York City Charter, and the Fire Prevention Code should be "read together and given a harmonious interpretation wherever possible" and in "such a way as will effectuate the legislative intent" (internal quotation marks omitted)]).
The remedy must follow the fact-finding. I would not dismiss out of hand the creation of de-identified records and a "permission list" of designated personnel which would allow the NYPD to comply with other laws (for example, local laws regarding the NYPD's aggregate data reporting requirements) and allow the NYPD to continue its oversight and disciplinary functions.
As proposed by plaintiffs, de-identified records would be redacted of personal identifying information. The Sealing Statutes are designed to protect [*8]the privacy of "persons" who were the subject of criminal prosecutions that have terminated in their favor (see Matter of Hynes v Karassik, 47 NY2d 659, 662 [1979] [the statutes serve the "laudable goal of insuring that one who is charged but not convicted of an offense suffers no stigma as a result of his having once been the object of an unsustained accusation"]). Once de-identified, however, the records can cause no harm to any individual and therefore, it might be possible to harmonize the Sealing Statutes with other laws.
It is also notable that the NYPD initially opposed plaintiffs' motion for a preliminary injunction in part because plaintiffs' requested relief would "interfere with NYPD's legally mandated reporting requirements under the New York City Administrative Code and New York City Charter" and would impact its "efforts of transparency and the public's desire for this information and data." In connection with its opposition, the NYPD submitted an affidavit from Deputy Inspector Gregory Clifford. He cited numerous New York City Administrative Code and New York City Charter provisions and one United States Code provision (essentially the list set forth above) that imposed reporting requirements on the NYPD, and he expressed the concern that an injunction prohibiting the NYPD from using information contained within a sealed arrest record would render it "unable to complete mandated reporting requirements."
In this regard, the NYPD argued below that its compilation of aggregate data did not run afoul of the Sealing Statutes because "[w]hen such data is aggregated for purposes of crimefighting analysis and, due to the cumulative effect of the data, cannot be used to identify a single arrestee nor, therefore, to stigmatize the accused, it does not constitute 'official records and papers' requiring sealing."
Although the NYPD reversed course in this appeal, its position below suggests that the issue of whether de-identified records would violate the Sealing Statutes is a novel one and should await the development of the legal and factual issues in this case.
Supreme Court should not be limited in the relief it may order before it has determined the extent of the violation it must address.
Order, Supreme Court, New York County (Lyle E. Frank, J.), entered on March 29, 2023, reversed, on the law, the order vacated, and the matter remanded to Supreme Court for further proceedings consistent with this decision.
Opinion by Kern, J.P., All concur except Moulton, J., who dissents in part by separate Opinion.
Kern, J.P., Gesmer, Moulton, Kennedy, Higgitt, JJ.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 4, 2024